# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| BRANDEE A. LEWIS,<br><br>        Plaintiff<br><br>vs.<br><br>KENNEBEC COUNTY<br>KENNEBEC COUNTY SHERIFF'S OFFICE,<br>KENNEBEC COUNTY SHERIFF'S OFFICE,<br>     CORRECTIONS DIVISION,<br>KENNEBEC COUNTY CORRECTIONAL FACILITY,<br>KENNEBEC COUNTY COMMISSIONERS being PATSY G. CROCKETT, Kennebec County Commissioner, District 1 in her individual and official capacity; NANCY G. RINES, District 2 in her individual and official capacity; and GEORGE M. JABAR, II, District 3 in his individual and official capacity.<br>BOB DEVLIN, in his official and individual capacity,<br>RYAN REARDON, in his official and individual capacity,<br>MARSHA ALEXANDER, in her official and individual capacity,<br>CALISTA CAMPBELL, in her official and individual capacity,<br>LAURA BRIGGS, in her official and individual capacity,<br>GARY FEARON, in his official and individual capacity,<br>DAN CYR in his official and individual capacity,<br>SERGEANT DARLING, in his official and individual capacity,<br>OFFICER BRYANT, in his official and individual capacity,<br>CORRECTIONAL HEALTH PARTNERS<br>KIMBERLY VIGUE, in her official and individual capacity, AND CRISIS & COUNSELING CENTERS<br><br>        Defendants | DOCKET No. _____ |

# COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Brandee A. Lewis, by and through her attorney, Jackie T. DiGiacomo, Esq. and for her complaint against defendants Kennebec County, Kennebec County Sheriff's Office and its Corrections Division, Kennebec County Correctional Facility, Kennebec County Commissioners, Ryan P. Reardon, Marsha Alexander, Calista Campbell, Laura Briggs,

Gary Fearon, Dan Cyr, Sergeant Darling, Officer Clark, Officer Grant, Officer Bryant, Correctional Health Partners, Kimberly Vigue and Crisis & Counseling Centers the hereby states as follows:

## SUMMARY

1) While being housed at the Kennebec County Correctional Facility as a detainee awaiting trial, Brandee A. Lewis (hereinafter referred to as "Lewis") was brutally sexually assaulted and physically assaulted by a nurse and multiple staff members at the Kennebec County Correctional Facility. The incident was captured on video by the jail's security camera system. While Defendant Vigue, is facing two counts of simple assault in a separate criminal matter related to this incident, none of the Kennebec County Correctional Facility personnel experienced any disciplinary action as a result. Subsequently, Lewis has been subjected to excessive use of force, OC sprayings on a regular basis and being Tasered by correctional facility personnel.  The gross sexual assault and subsequent use of excessive force on numerous occasions by correctional facility personnel violated Lewis' constitutional rights and resulted in substantial physical pain as well as long-term anxiety and other mental, emotional and psychological harms.

## PARTIES

2) Plaintiff Brandee A. Lewis ("Lewis") is a resident of Maine, currently being treated at Riverview Psychiatric Center in Augusta, Maine. At all times relevant to this complaint, Lewis was housed at the Kennebec County Correctional Facility in the State of Maine, in the custody of the Kennebec County Sheriff's Office and the Kennebec County Sheriff's Office, Corrections Division, as pretrial detainee at times and as an inmate having violated probation at other times.

3) Defendant Kennebec County is a county organized in the State of Maine in 1799, whose principal place of business is 125 State Street, 2nd Floor, Town of Augusta, County of Kennebec, and State of Maine 04330 and is a duly organized entity of local government under Maine law. Defendant Kennebec County transacts its affairs in the County of Kennebec. Defendant Kennebec County transacts its affairs in the County of Kennebec.

1) Defendant Kennebec County Sheriff's Office is a department within the County of Kennebec which operates the Kennebec County Correctional Facility and has a principal office located at 125 State Street, Town of Augusta, County of Kennebec, State of Maine 04330.  Defendant Kennebec County Sheriff's Office (hereinafter "KCSO") is a duly organized entity of local government under Maine law and Kennebec County code or ordinance. Defendant Kennebec County Sheriff's Office transacts its affairs in the County of Kennebec. Defendant Kennebec County Sheriff's Office transacts its affairs in the County of Kennebec.

2) Defendant Kennebec County Sheriff's Office, Corrections Division is a division of Kennebec County Sheriff's Office and is part of the County of Kennebec local government which is operated by the KCSO.  It has a principal location of 115 State Street, Town of Augusta, County of Kennebec, State of Maine 04330 and is a duly organized entity of local government under Maine law and Kennebec County code or ordinance. Defendant Kennebec County Sheriff's Office, Corrections Division transacts its affairs in the County of Kennebec. Defendant Kennebec County Sheriff's Office, Corrections Division transacts its affairs in the County of Kennebec.

4) Defendant Kennebec County Correctional Facility (hereinafter "KCCF") is part of the Corrections Division of the County of Kennebec which is operated by the KCSO and has

a principal location of 115 State Street, Town of Augusta, County of Kennebec, State of Maine 04330 and is a duly organized entity of local government under Maine law and Kennebec County code or ordinance. Defendant Kennebec County Correctional Facility transacts its affairs in the County of Kennebec. Defendant KCCF transacts its affairs in the County of Kennebec.

5) Defendant Kennebec County Commissioners (hereinafter "Commissioners") are the County Commissioners.  The Kennebec County Commissioners have a principal location of 125 State Street, 2nd Floor, Augusta, Maine 04330.   Each Kennebec County Commissioner, Patsy G. Crockett, Nancy G. Rines and George Jabar, II is being sued in their individual and official capacities.  Pursuant to 30-A M.R.S.A. §61(1), each county commissioner is required to reside in the district which they represent.   Each commissioner is therefore required to reside in Kennebec County.  At all times pertinent to this action, the Commissioners acted under color of state law. Each of the Defendant Kennebec County Commissioners reside, are found, has an agent, or transacts their affairs in Kennebec County.

6) Defendant Bob Devlin is the County Administrator for Kennebec County with a principal office location of 125 State Street, 2nd Floor, Augusta, Maine 04330.  He is a resident of the Town of Gardiner, County of Kennebec, State of Maine.  Defendant Devlin is being sued in his individual and official capacity. Defendant Devlin resides, is found, has an agent, or transacts his affairs in Kennebec County.

7) Defendant Ryan P. Reardon is the interim-Sheriff for the KCSO.  Defendant Reardon resides at 268 Country Club Road in the Town of Oakland, County of Kennebec, State of Maine. At all times pertinent to this action, he was a supervisor and/or high-ranking

official at KCSO with management authority over the Plaintiffs and the Defendants. He is being sued in both his official and individual capacities. At all times pertinent to this action, Defendant Reardon acted under color of state law. Defendant Reardon resides, is found, has an agent, or transacts his affairs in Kennebec County.

8) Defendant Captain Marsha J. Alexander is the Corrections Administrator for KCSO and is a resident of Oakland, Maine, County of Kennebec. At all times pertinent to this action, she was a supervisor and/or high-ranking official at KCSO with management authority over the Plaintiffs. She is being sued in both her official and individual capacities. At all times pertinent to this action, Defendant Alexander acted under the color of state law. Defendant Alexander resides, is found, has an agent, or transacts her affairs in Kennebec County.

9) Defendant Calista Campbell is a Lieutenant for KCSO who resides at 5 Pine Needle Alley, Town of Wayne, County of Kennebec, State of Maine. She is being sued in both her official and individual capacities. At all times pertinent to this action, Defendant Campbell acted under color of state law. Defendant Campbell resides, is found, has an agent, or transacts her affairs in Kennebec County.

10) Defendant Laura Briggs is a Lieutenant for KCSO and resides at 70 Blaine Road, Town of Hallowell, County of Kennebec, State of Maine. She is being sued in both her official and individual capacities. At all times pertinent to this action, Defendant Briggs acted under the color of state law. Defendant Briggs resides, is found, has an agent, or transacts her affairs in Kennebec County.

11) Defendant Gary Fearon is a mental health worker who is employed by Crisis & Counseling Centers which holds a contract with Kennebec County, the Kennebec County

Sheriff's Office and its Corrections Division and/or Kennebec County Correctional Facility. Defendant Fearon has a principal business location at 10 Caldwell Road, Town of Augusta, County of Kennebec, State of Maine. At all times pertinent to this action, Defendant Fearon acted under color of state law. Defendant Fearon resides, is found, has an agent, or transacts his affairs in Kennebec County.

12) Defendant Darling is a Sergeant for KCSO and is a resident of Maine, town unknown to Plaintiff at this time. It is the Plaintiff's belief that he resides in Kennebec County. He is being sued in both his official and individual capacities. At all times pertinent to this action, Defendant Darling acted under color of state law. Defendant Darling resides, is found, has an agent, or transacts his affairs in Kennebec County.

13) Defendant Bryant is a Corrections Officer for KCSO and is a resident of Maine, town unknown to Plaintiff at this time. It is the Plaintiff's belief that he resides in Kennebec County. He is being sued in both his official and individual capacities. At all times pertinent to this action, Defendant Bryant acted under color of state law. Defendant Bryant resides, is found, has an agent, or transacts his affairs in Kennebec County.

14) Defendant Dan Cyr is a Sergeant for KCSO and is a resident of Maine, town unknown to Plaintiff at this time. It is the Plaintiff's belief that he resides in Kennebec County. He is being sued in both his official and individual capacities. At all times pertinent to this action, Defendant Cyr acted under color of state law. Defendant Cyr resides, is found, has an agent, or transacts his affairs in Kennebec County.

15) Crisis & Counseling Centers provides integrated health services to correctional facilities in Maine. Crisis & Counseling Centers has a principal business location of 10 Caldwell Road, Town of Augusta, County of Kennebec, State of Maine. At all times pertinent to

this action, Defendant Crisis & Counseling Centers employed Defendant Fearon to provide mental health counseling services to the inmates at the Kennebec County Correctional Facility.  Crisis & Counseling Centers is found, has an agent, or transacts affairs in Kennebec County.

16) Defendant Kimberly Arlene Vigue is a registered nurse in the State of Maine who, at all times relevant to this Complaint, was employed by Correctional Health Partners which has a principal place of business located at 1125 17th Street Suite 1000, City of Denver, State of Colorado 80202.  At all times relevant to this Complaint, Defendant Vigue provided health services as a registered nurse to Kennebec County, the Kennebec County Sheriff's Office and its Corrections Division and/or Kennebec County Correctional Facility.  It is the Plaintiff's belief that Defendant Vigue resides at 256 Town Farm Road, Town of Oakland, County of Kennebec, State of Maine. Defendant Vigue resides, is found, has an agent, or transacts her affairs in Kennebec County.

17) Defendant Correctional Health Partners has a principal place of business located at 1125 17th Street Suite 1000, City of Denver, State of Colorado 80202.  Defendant CHP employed Defendant Vigue during times relevant to this Complaint.  CHP is found, has an agent, or transacts affairs in Kennebec County.

## JURISDICTION AND VENUE

18) This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States.  In this Complaint, there arise there arise claims concerning questions of Federal laws,

specifically, the Eighth Amendment and the Fourteenth Amendment to the United States Constitution;  and 42 U.S. Code §1983.

b.   28 U.S.C. §1367, which gives district courts supplemental jurisdiction over state law claims.  In this Complaint, the State law claims are violations of the Maine Civil Rights Act; and

c.   This action seeks to vindicate rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution, and Article I Section 6-A of the Maine Constitution. It is brought pursuant to the Federal Civil Rights Act, 42 U.S.C. §1983, and the Maine Civil Rights Act, 17 M.R.S. § 2931.

19) This Court has supplemental jurisdiction over the state civil rights action pursuant to 28 U.S.C. § 1367 because the state action stems from the same common nucleus of operative facts as the federal civil rights claim.

20) Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) & (2) because:

a.   Defendants Ryan P. Reardon, Marsha Alexander, Calista Campbell, Laura Briggs, Dan Cyr, Bob Devlin, Patsy G. Crockett, Nancy G. Rines and George M. Jabar, II, Andrew Darling, Darrell Bryant and Kimberly Arlene Vigue are subject to personal jurisdiction in this judicial district and each of the Defendants resides, is found, has an agent, or transacts their affairs in this District;

b.   Kennebec County, the Kennebec County Sheriff's Office and its Corrections Division, the Kennebec County Correctional Facility, Crisis and Counseling Centers and Correctional Health Partners are located wholly within this district and transact their affairs in this District; and

c.   The events that give rise to this Complaint occurred in this district.

## STATEMENT OF FACTS

21) This complaint arises from an incident that occurred on or about December 21st or 22nd of 2015 in the "Intake" department at Kennebec County Correctional Facility (hereinafter referred to as "KCCF").

22) Lewis was then a pretrial detainee, awaiting court proceedings for criminal charges.

23) This complaint also arises from the subsequent treatment Lewis received as an inmate of KCCF during the period of time from January 2016 through October 24, 2016, with brief periods where she was not incarcerated.  Lewis was housed at KCCF for a probation violation from late August 2016 to October 24, 2016 at which time she was transferred to Riverview Psychiatric Center.

24) Lewis is a 21 year old female who suffers from multiple psychological conditions stemming from severe physical, emotional, mental and sexual childhood abuse.

25) The psychological conditions Lewis has been diagnosed with include Post Traumatic Stress Disorder, Oppositional Defiant Disorder, and some form of personality disorder. These conditions cause Lewis to behave, in large part, in a child-like manner.

26) These psychological conditions have given Lewis adverse reactions to loss of sleep and invasion into her personal space.

27) The staff at KCCF, including mental health worker Defendant Fearon, knew or should have known about these psychological conditions, Lewis's childhood history of severe abuse, and the subsequent behaviors resulting from the psychological conditions.

28) Kimberly Arlene Vigue is a registered nurse at the Maine Board of Nursing under registration number RN51269 (hereinafter referred to as "Vigue").  Vigue was employed

by Correctional Health Partners (hereinafter referred to as "CHP") and under contract with KCCF to provide medical services to inmates housed at the jail.

29) On information and belief, CHP permitted a doctor on its staff who was not authorized by the State of Maine to dispense prescription medications to prescribe or otherwise dispense medications to inmates housed at KCCF.

30) Prior to December 21st or 22nd of 2015, Defendant Alexander and Defendant Campbell, during a supervisors meeting, informed management officers that Vigue had "special privileges" at the jail and that they might see Vigue do things that were "not normally done" while providing medical services to inmates.

31) On December 21st or 22nd of 2015, as is her right, Lewis refused her medication while medications were being dispensed by Vigue,.

32) Upon Lewis's refusal of medication, Vigue made unlawful attempts to force medication upon Lewis, with the assistance of then-Sergeant Dan Cyr (hereinafter referred to as "Cyr"), mental health worker Gary Fearon (hereinafter referred to as "Fearon"), then-Staff Sergeant Laura Belanger Briggs (hereinafter referred to as "Briggs") and two corrections officers.

33) Lewis, at the time of the incident, was strapped to a chair and unable to move her arms which were secured by restraints.  Lewis was also unable to get up from the chair.

34) Vigue, determined to force Lewis to take medication, went to the medical supply room, retrieved four syringes, three containing saline solution and one containing a medication which has a highly sedative property.  This medication was not ordered by a physician or prescribed for Lewis.  In an extremely threatening manner, Vigue placed the syringes in front of Lewis.

35) Vigue did this with Cyr, Fearon and Briggs present.

36) When Lewis continued to decline her medication, Vigue injected her with one of the syringes and asked, "Are you going to take your medication now?"

37) Lewis still refused.

38) Lewis was scared, emotionally traumatized and crying.

39) Vigue then took another syringe and injected Lewis and asked again if she was going to take her medication.  Lewis again declined.

40) Vigue repeated this until all four syringes were injected into Lewis.

41) While this was occurring, Lewis was screaming, yelling and crying, begging Vigue to stop.

42) When Lewis continued her refusal to take the medication, Vigue, with the acquiescence and/or assistance of Cyr, Fearon, Briggs and the two corrections officers, transported her to the shower room.

43) In the shower room, Vigue pulled Lewis' pants down and inserted a suppository medication into her anus.

44) Lewis did nothing to provoke or to justify the sexual assault perpetrated by Vigue with the acquiescence and/or assistance of Cyr, Fearon and Briggs.

45) At no time was Lewis a threat to Vigue, Cyr, Fearon, Briggs, herself or anyone else.

46) Vigue, Cyr, Fearon and Briggs did nothing to temper the severity of their attack; in fact, the violence of their attack escalated even as Lewis became more incapacitated.

47) The events described in paragraphs 33 through 48 of this complaint were captured on videotape by the KCCF security camera system.

48) Based on information and belief, that recording is currently in the custody of the Kennebec County Sheriff's Office and/or the Kennebec County Sheriff's Office, Corrections Division.

49) The next day, a mental health worker not involved in the incident attended a visit with Lewis.  Upon entering Lewis's cell, this worker observed Lewis in a fetal position, cowering in fear.

50) This mental health worker asked Lewis what was wrong and Lewis proceeded to tell her that "they put something up my butt."  Lewis then began to sob uncontrollably while the mental health worker attempted to soothe her.

51) Subsequent to this incident, an investigation was conducted by Briggs who was involved in the incident.

52) Based on information and belief, the documents contained in Briggs investigation were "missing" or "lost."

53) As a result of Briggs investigation, no KCCF personnel were reprimanded or disciplined for the sexual assault and physical assault upon Lewis.

54) When the Office of Professional Review became aware of the situation, a separate investigation ensued.

55) As a result of the second investigation done by the Office of Professional Review, Vigue has been charged with two counts of simple assault.

56) Since the December 2015 incident, Lewis has suffered severe emotional trauma, anxiety, depression, sleeplessness and fear of her surroundings.

57) On October 12, 2016, Lewis was assessed by Dr. Baeder as a forensic psychologist of the Department of Health and Human Services.  Lewis was determined to be incompetent to

stand trial and court ordered to be transferred to a psychiatric unit for evaluation and treatment.

58) In the 11 months that followed, before her transfer to Riverview Psychiatric Center, Lewis was subjected to multiple incidents of excessive use of force by KCCF officials.

59) On October 5, 2016, Lewis was given a "spork" to eat her dinner with.  Sergeant Darling (hereinafter referred to as "Darling"), knowing that Lewis was classified as special management and should not have a spork, approached Lewis and made demand for the spork.  Lewis replied she would give him the spork when she was done eating dinner, unknowing why the demand was being made and just simply wanting to finish her dinner.

60) Darling then pulled out his Electronic Device (Taser) and pointed it at Lewis which sent her into a panic.  She immediately became compliant and put up her hands to indicate that she posed no threat.

61) Darling retrieved the spork and subsequently ordered Lewis to be strip searched, although there was no justification for so ordering.

62) The random strip searches performed on Lewis without justification subjected her to humiliation and further compounded her trauma.

63) On October 8, 2016, Lewis was using a piece of chalk given to her by Officer Pizzutto. Lewis was not using the chalk in any threatening manner or causing any disturbance with the chalk.

64) At approximately 8:25 p.m., Defendant Bryant then demanded Lewis hand him the chalk. Lewis, confused as to why Bryant was demanding the chalk back, and given that she has

psychological disorders that cause her to act in a child-like manner, put the chalk in the top part of her suicide smock.

65) The suicide smock is a heavy, padded garment which is secured on the person with Velcro.  An inmate wearing a suicide smock does not have any clothing underneath it.  It is a dress-like garment and the only result of putting the chalk in her smock would be for it to fall out onto the ground from the bottom.

66) In an effort to retrieve a piece of chalk from Lewis, Defendant Bryant violently slammed her against the wall, threw her to the ground and pinched her arm with such force as to cause a large, hand-sized bruise on her left arm.  **See Attached Exhibit 1**.

67) During this violent attack on Lewis, she sustained a bruise on her face from Defendant Bryant's boot hitting her across the cheek.

68) Multiple officers, corporals and sergeants at KCCF regularly used OC spray on Lewis as a means of punishment and/or in a threatening way to discipline or reprimand Lewis. When dispensed, they would leave her until the last legal time limit to shower her off or remove the OC spray.

69) Multiple officers, corporals and sergeants at KCCF often used a Taser on Lewis as a means of punishment and/or in a threatening way to discipline or reprimand Lewis.

70) Multiple officers, corporals and sergeants at KCCF often used other means to punish or discipline Lewis by strapping her to the board for extended periods of time, cuffing her to benches for extended periods of time, including during night hours to cause her lack of sleep and to deprive her of sleep by intentionally flashing her with a flash light upon the face to rouse her from sleep for extended periods of time during overnight hours.

71) Defendant Briggs ordered that Lewis remain in a "suicide suit" and have no shoes despite the fact that Lewis was not suicidal.  Oftentimes, the suit given to Lewis was either extremely large or too small so that it would irritate her body (Velcro rubbing against her skin).

72) Lewis, through counsel, made four separate grievances regarding excessive use of force and other complaints.

73) Without any true investigation into the matter, KCCF determined that there was not enough evidence of the events complained of.

74) During a visit with her client, counsel requested the results of each of the grievances, which were given to Lewis.  Lewis requested that officers and staff hold them at the Intake Desk.

75) Counsel was advised that the documents requested could not be found and that Lewis must have destroyed them.

76) Subsequently, officers working at Intake saw the documentation counsel requested, days after it was reported to counsel to be "missing".

77) All the events complained of by Lewis in her grievances were captured on videotape by the KCCF security camera system.

### COUNT ONE — GROSS SEXUAL ASSAULT

78) Lewis reasserts and realleges the allegations in the above paragraphs as though fully stated herein.

79) 17-A M.R.S.A. §251(1)(C) defines a sexual act as being any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by another person for the purpose of causing offensive physical contact.

80) 17-A M.R.S.A. §253(2)(A) defines gross sexual assault as a person engaging in a sexual act with another person and the actor has substantially impaired the other person's power to appraise or control the actor's sexual acts by administering or employing drugs, intoxicants or other similar means.

81) 17-A M.R.S.A. §253(2)(B) defines gross sexual assault as an actor compelling or inducing the other person to engage in the sexual act by any threat.

82) 17-A M.R.S.A. §253(2)(C) defines gross sexual assault as a person engaging in a sexual act and the other person suffers from mental disability that is reasonably apparent or known to the actor, and which in fact renders the other person substantially incapable of appraising the nature of the contact involved or of understanding that the person has the right to deny or withdraw consent.

83) 17-A M.R.S.A. §253(2)(D) defines gross sexual assault as a person engaging in a sexual act and the other person is otherwise physically incapable of resisting and has not consented to the sexual act.

84) Under all four versions of the definition of gross sexual assault, Vigue sexually assaulted Lewis when she inserted a suppository into the anus of Lewis for the purpose of causing offensive physical contact.

85) 17-A M.R.S.A. §57 holds a person guilty of a crime if it is committed by the conduct of another person for which the person is the accomplice in the commission of the crime, if, with the intent of promoting or facilitating the commission of the crime aids or agrees to aid or attempts to aid such other person in committing the crime which was a reasonably foreseeable consequence of the person's conduct.

86) Defendant Briggs committed the criminal offense of accomplice to gross sexual assault in violation of 17-A M.R.S.A. §§57 & 253 by rendering Lewis physically incapable of resisting by restraining Lewis with the use of straps to a chair and securing her arms and feet.

87) Defendant Cyr committed the criminal offense of accomplice to gross sexual assault in violation of 17-A M.R.S.A. §§57 & 253 by rendering Lewis physically incapable of resisting by restraining Lewis with the use of straps to a chair and securing her arms and feet.

88) Defendant Fearon, a mental health worker, committed the criminal offense of accomplice to gross sexual assault in violation of 17-A M.R.S.A. §§57 & 253 by rendering Lewis physically incapable of resisting by restraining Lewis with the use of straps to a chair and securing her arms and feet and because he knew or should have known that Lewis suffered from mental disabilotiy that is reasonably apparent or contained in her medical files.

89) Defendants Briggs, Cyr and Fearon knew and understood that Lewis could not resist the sexual act perpetrated by Vigue and in fact, aided Vigue by threat and force against Lewis.

90) Defendants Briggs, Cyr and Fearon substantially impaired Lewis's power to appraise or control Vigue's sexual acts by strapping Lewis to a chair and assisting Vigue in administering drugs, intoxicants and other similar means.  Defendant Briggs and Defendant Cyr compelled or induced Lewis to engage in the sexual act by threat and by physically restraining Lewis while Vigue pulled her pants down and inserted a suppository medication in her anus.

91) 17-A M.R.S.A. §60 imposes criminal liability upon an organization when conduct or result specified in the definition of a crime is engaged in or caused by an agent of the organization while acting within the scope of the agent's office or employment.

92) Defendants Kennebec County, Kennebec County Sheriff's Office and its Corrections Division, and the Kennebec County Correctional Facility are criminally liable for the conduct of Defendants Briggs, Cyr and Fearon who participated in the gross sexual assault of Lewis.

93) As a proximate result of the violation of her person by gross sexual assault, Lewis has suffered pecuniary loss, emotional distress, physical injury, and other damages for which she seeks compensation.

94) As a result of those actions and consequent harms, Lewis has suffered such damages in an amount to be proved at trial.

95) Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Lewis's rights.

96) Lewis requests relief as described in the Prayer for Relief below.

**COUNT TWO – FAILURE TO REPORT SEXUAL ABUSE OF PERSON IN CUSTODY**

97) Lewis reasserts and realleges the allegations in the above paragraphs as though fully stated herein.

98) 17-A M.R.S.A. §760 imposes an affirmative duty upon staff persons of prisons or other institutions to report to an appropriate criminal justice agency a sexual assault which occurs against a person in custody if the staff person knows that a person detained in that institution is the victim of a crime of sexual assault which occurred while the detained person was in the institution.  Failure to make such a report is a Class E crime.

99) Defendants Briggs, Cyr and Fearon committed the criminal offense, in a criminal conspiracy, of Failure to Report Sexual Abuse of Person in Custody in violation of 17-A M.R.S.A. §760 in that they knew Lewis, who was a person detained at the Kennebec County Correctional Facility, was the victim of the crime of sexual assault that occurred while she was detained at the Kennebec County Correctional Facility and, in fact, none of the Defendants reported that crime to an appropriate criminal justice agency.   More particularly:

    a.   Defendant Briggs failed to report sexual abuse of Lewis despite the fact that Defendant Briggs was witness to and participated in the gross sexual assault. Defendant Briggs subsequently did an "investigation."   Since Defendant Briggs was involved in and participated in the sexual assault, she is disqualified from conducting the investigation but was charged with the investigation nonetheless.  Subsequent to Defendant Briggs' investigation, all the statements made by witnesses and the video tape recording of the incident went "missing."

    b.    Defendant Cyr failed to report sexual abuse of Lewis despite the fact that Defendant Cyr was witness to and participated in the gross sexual assault.

    c.   Defendant Fearon failed to report sexual abuse of Lewis despite the fact that Defendant Fearon was witness to and participated in the gross sexual assault.

100)   30-A M.R.S.A. §401(1) delegates the administering and directing of the sheriff's department as authorized by the county budget to the sheriff.

101)     Defendant Reardon is the acting sheriff of the Kennebec County Sheriff's Office and thus, the responsible individual for its Corrections Division which operates the Kennebec County Correctional Facility.

102)     Defendant Reardon knew or should have known that this incident occurred upon two separate investigations which took place.  The first investigation was conducted by Defendant Briggs, herself, who participated in the sexual assault.   The second investigation took place by the Office of Professional Review which reports to the Sheriff.  The gross sexual assault of Lewis who has severe emotional and mental trauma and illness was covered up by the Kennebec County Correctional Facility and the Kennebec County Sheriff's Office.

103)     Defendant Reardon failed to report the sexual abuse of Lewis who was a person detained by the Kennebec County Correctional Facility to an appropriate criminal justice agency.

104)     Defendant Alexander failed to report the sexual abuse of Lewis who was a person detained by the Kennebec County Correctional Facility to an appropriate criminal justice agency.  Defendant Alexander knew or should have known that this incident occurred upon two separate investigations which took place.  The first investigation was conducted by Defendant Briggs, herself, who participated in the sexual assault.   The second investigation took place by the Office of Professional Review which reports to the Captain/Jail Administrator.  The gross sexual assault of Lewis who has severe emotional and mental trauma and illness was covered up by the Kennebec County Correctional Facility and the Kennebec County Sheriff's Office.

105)     In fact, Defendant Alexander ordered the Office of Professional Review to conduct its investigation in haste, stating a certain, limited time frame to "wrap up" its investigation.

106)     Defendant Campbell failed to report the sexual abuse of Lewis who was a person detained by the Kennebec County Correctional Facility to an appropriate criminal justice agency.  Defendant Campbell knew or should have known that this incident occurred upon two separate investigations which took place.  The first investigation was conducted by Defendant Briggs, herself, who participated in the sexual assault.  The second investigation took place by the Office of Professional Review which reports to the Lieutenant/Assistant Jail Administrator.  The gross sexual assault of Lewis who has severe emotional and mental trauma and illness was covered up by the Kennebec County Correctional Facility and the Kennebec County Sheriff's Office.

107)     30-A M.R.S.A. §401(2) imposes a duty upon the County Commissioners to regularly review the sheriff's operations and ensure that the law enforcement functions required under the budget are adequately performed.

108)     The law enforcement functions required under the budget include the administration of the of the Kennebec County Sheriff's Office Law Enforcement division and its Corrections Division.

109)     The County Commissioners knew or should have known that an inmate at the Kennebec County Correctional Facility was sexually abused while in its custody.  The County Commissioners failed to report the sexual abuse of Lewis to an appropriate criminal justice agency.

110)     17-A M.R.S.A. §60 imposes criminal liability upon an organization when conduct or result specified in the definition of a crime is engaged in or caused by an agent of the organization while acting within the scope of the agent's office or employment.

111)     Defendants Kennebec County, Kennebec County Sheriff's Office and its Corrections Division, and the Kennebec County Correctional Facility a criminally liable for the conduct of Defendants Briggs, Cyr and Fearon who participated in the gross sexual assault of and failed to report the sexual abuse of Lewis.

112)     Correctional Health Partners failed to report the sexual assault of Lewis by its employee and/or agent Vigue.  Subsequent to this incident, upper management was advised of the actions of its employee.  The Chief Executive Officer and Chief Medical Officer of the company travelled to Maine to investigate and/or have meetings with jail personnel regarding this incident.  At no time did CHP report this sexual assault to an appropriate agency, nor did CHP report Vigue to the Board of Licensing.  CHP only fired Vigue, without taking any mandatory action to report the incident.

113)     Reporting the gross sexual assault of Lewis to the appropriate law enforcement agency would have ensured Lewis's safety, health and well-being in multiple ways:

   a.  Vigue would have been prohibited from future contact with Lewis;

   b.  Lewis would have received adequate counseling and mental health services after the incident as a person having been sexually assaulted;

   c.  Lewis, being incarcerated and at the mercy of her jailers, would have felt some security in knowing that the people incarcerating her had some sense of human decency in her treatment.

114)    Instead, Lewis's jailers and CHP management opted to perpetrate a concealment and cover-up of the incident and abuse Lewis further by regular use of OC spray, Electronic Devices, and physical force in further cruelty, abuse and torture of Lewis.

115)    As a proximate result of the violation of their failure to report the gross sexual assault of Lewis, Lewis has suffered pecuniary loss, emotional distress, physical injury, and other damages for which she seeks compensation.

116)    As a result of those actions and consequent harms, Lewis has suffered such damages in an amount to be proved at trial.

117)    Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Lewis's rights.

118)    Lewis requests relief as described in the Prayer for Relief below.

## COUNT THREE – VIOLATION OF CIVIL RIGHTS 42 U.S.C. §1983
## EIGHTH AMENDMENT of the UNITED STATES CONSTITION
## (CRUEL AND UNUSUAL PUNISHMENT)

119)    Lewis reasserts and realleges the allegations in the above paragraphs as though fully stated herein.

120)    The Count Three Defendants consist of Kennebec County, Kennebec County Sheriff's Office and its Corrections Division, Kennebec County Correctional Facility, Kennebec County Commissioners, Defendant Devlin, Defendant Reardon, Defendant Alexander, Defendant Campbell, Defendant Briggs, Defendant Fearon, Defendant Cyr, Defendant Darling and Defendant Bryant.

121)    The Count Three Defendants were, at all times relevant to this complaint, elected or appointed officials of the County of Kennebec and acted under color of law to deprive Lewis of her constitutionally protected rights including, but not limited to, the right to be

free of cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution, made applicable to the States through the Fourteenth Amendment of the Constitution of the United States.

122)    As alleged herein and above, the Defendants' participation in and failure to report the gross sexual assault of Lewis constitutes a deprivation of Lewis's Eighth Amendment rights because Defendants knew of and disregarded an excessive risk to Lewis's health and safety with deliberate indifference.

123)    The Defendants were aware of all pertinent facts related to the gross sexual assault of Lewis in that they:

    a.  Witnessed Vigue dispensing syringes of saline and a controlled substance which is highly sedative, one by one, pausing with each injection as she asked Lewis, "Are you going to take your medication now?"

    b.  Held, bound or otherwise restrained Lewis so that Vigue could dispense the syringes.

    c.  Heard the cries and pleas of Lewis for Vigue to stop and for someone to help her.

    d.  Knew that it was Lewis's right to refuse medication and that she could not be forced into taking said medication or dispensed medication without her consent.

    e.  Held, bound or otherwise restrained Lewis while Vigue pulled her pants down.

    f.  Held, bound or otherwise restrained Lewis while Vigue inserted a suppository in her anus.

124)    The Defendants, aware of these facts from which the inference could be drawn that a substantial risk of serious harm toward Lewis existed, did in fact draw such inference as evidenced by the fact that:

a.  Lewis was screaming and pleading for the Defendants and Vigue to stop at the time of the incident;

b.  Defendants assisted Vigue in holding, binding, securing and otherwise restraining Lewis who was resisting Vigue's attempts to insert medication into her anus;

c.  The Defendants observed Vigue forcibly pulling the pants down, exposing Lewis's naked genitals when male staff members were present;

d.  Any person who was forcibly being given medication anally and against their will would experience serious harm physically, mentally and emotionally;

e.  The Defendants knew or should have known that dispensing of medication against the will of an inmate at the jail is against policy and procedure;

f.  The Defendants knew or should have known dispensing of medication against the will of an inmate is against Maine State Department of Corrections standards;

g.  This incident occurred over a long span of time, sufficient for the Defendants to intervene and stop Vigue from sexually assaulting Lewis;

h.  The Defendants made no attempt to stop Vigue from injecting Lewis with syringes which were not prescribed for her and from inserting suppository medication into her anus; and

i.  The subsequent cover-up of this crime by staff at KCCF illustrates their knowledge of culpability for this incident.

125)  As alleged herein and above, the Defendants' excessive use of force upon Lewis constitutes a deprivation of Lewis's Eighth Amendment rights because Defendants knew of and disregarded an excessive risk to Lewis's health and safety with deliberate indifference.

126)     The Defendants were aware of all pertinent facts related to the excessive use of force of Lewis in that they:

    a.  Used OC spray in a manner inconsistent with KCCF policies and procedure which state in no uncertain terms that the use of or threatened use of OC spray is not intended to be a means for punishment;

    b.  Used Electronic Devices in a manner inconsistent with KCCF policies and procedures which state such use is only intended for extreme situations where there is a threat of bodily harm or of an inmate fleeing;

    c.  Failed to follow KCCF policy and procedure in that Briggs ordered Lewis to remain in a suicide smock and with no shoes for three weeks, without justification;

    d.  Failed to follow KCCF policy and procedure in investigating excessive use of force grievances which are mandated to be reported to the Office of Professional Review;

    e.  Failed to follow KCCF policy and procedure by keeping Lewis in OC spray for the last legal minute before allowing her to shower off the OC spray, causing her allergic reactions; and

    f.  Used force in a manner inconsistent with KCCF policies and procedures to cause bruising on Lewis.

127)     The Defendants, aware of these facts from which the inference could be drawn that a substantial risk of serious harm toward Lewis existed, did in fact draw such inference as evidenced by the fact that:

    a.  Lewis's  reactions to the excessive use of force being fear;

b. KCCF failure to provide Lewis's counsel with a copy of the grievances determination reports; and

c. The subsequent cover-up of the excessive use of force by staff at KCCF illustrates their knowledge of culpability for this incident.

128) As a proximate result of the violation of her constitutional rights, Lewis has suffered pecuniary loss, emotional distress, physical injury, and other damages for which she seeks compensation.

129) As a result of those actions and consequent harms, Lewis has suffered such damages in an amount to be proved at trial.

130) Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Lewis's rights.

131) Lewis requests relief as described in the Prayer for Relief below.

**COUNT FOUR—VIOLATION OF CIVIL RIGHTS 42 U.S.C. §1983**
**FOURTEENTH AMENDMENT of the UNITED STATES CONSTITION and**
**ARTICLE I, SEC. 6-A of the MAINE STATE CONSTITUTION**
**(DUE PROCESS)**

132) Lewis reasserts and realleges the allegations in the above paragraphs as though fully stated herein.

133) The Fourteenth Amendment to the U.S. Constitution guarantees all United States citizens freedom from deprivation of life, liberty or property without due process of law.

134) Article I, Sec. 6-A of the Constitution of the State of Maine guarantees all Maine citizens freedom from deprivation of life, liberty or property without due process of law.

135) Albeit limited, Lewis had certain "liberty interests" as an inmate incarcerated at the Kennebec County Correctional Facility.

136)     One such liberty was the freedom to choose whether or not to take her prescribed medication.

137)     This decision-making freedom is evidenced through (cite SOPs or MDOC standards).

138)     This decision-making freedom is an essential right of all incarcerated persons and is of high importance that despite being incarcerated, they cannot be forced into taking medications.

139)     The risk is substantial for erroneous deprivation through the procedures used by Vigue and KCCF staff.

140)     Safeguards are in place so that incarcerated individuals are not forced into taking medications.  Despite those safeguards, Lewis was deprived of her liberty interest when Vigue and KCCF staff (Defendants) imposed their will upon her to take the medication by force.

141)     Acting in a rogue-like manner, with depraved indifference to the safeguards, standards, rules, policies and procedures in place, Vigue violated Lewis's liberty to decide whether or not to take her medication.

142)     KCCF staff assisted Vigue in violating Lewis's right to due process by assisting and otherwise abetting in the criminal activity of gross sexual assault upon Lewis.

143)     Subsequently, with deliberate indifference to Lewis's rights, safety, health and/or well-being, KCCF staff perpetrated the concealment and cover-up of this crime by failing to report the sexual abuse of a person in custody.

144)     As a proximate result of the violation of her due process rights, Lewis has suffered pecuniary loss, emotional distress, physical injury, and other damages for which she seeks compensation.

145)     As a result of those actions and consequent harms, Lewis has suffered such damages in an amount to be proved at trial.

146)     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Lewis's rights.

147)     Lewis requests relief as described in the Prayer for Relief below.

### COUNT FIVE – VIOLATION OF THE MAINE CIVIL RIGHTS ACT

148)     Lewis reasserts and realleges the allegations in the above paragraphs as though fully stated herein.

149)     17 M.R.S.A. §2931 makes a Class D crime when a person, by force or threat of force, intentionally injures, intimidates or interferes with any person in the free exercise or enjoyment of any right or privilege secured to that person by the Constitution of Maine or the United States Constitution.

150)     5 M.S.R.S.A. §4684-A guarantees a person the right to engage in lawful activities without being subjected to physical force or violence which is motivated by reason of mental disability.

151)     Lewis suffers from mental illness in that she has multiple psychological conditions which render her behavior child-like.

152)     Staff and personnel at KCCF knew or should have known that Lewis suffers from mental illness due to psychological trauma and conditions.

153)     The Defendants, acting under color of state law, used excessive force to cause harm to Lewis without adequate justification.

154)     Lewis was engaged in lawful activities such as reading, using chalk given to her by Officers, eating dinner, etc. when Defendants, while acting under color of state law, used excessive force, OC spray and other forms of punishment upon Lewis.

155)     The use of force, OC spray and other forms of punishment are repugnant to the conscience of humanity.

156)     The Defendants intentionally interfered with Lewis' rights under the Maine Constitution by use of physical force and violence against her.

157)     As a proximate result of the violation of her civil rights, Lewis has suffered pecuniary loss, emotional distress, physical injury, and other damages for which she seeks compensation.

158)     As a result of those actions and consequent harms, Lewis has suffered such damages in an amount to be proved at trial.

159)     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Lewis's rights.

160)     Lewis requests relief as described in the Prayer for Relief below.

## COUNT SIX – NEGLIGENT SUPERVISION

161)     Lewis reasserts and realleges the allegations in the above paragraphs as though fully stated herein.

162)     30-A M.R.S.A. §82 provides that, "The county administrator is the chief administrative official of the county and is responsible for the administration of all departments and offices controlled by the county commissioners."

163)      Defendant Bob Devlin is the County Administrator for Kennebec County.

164)      The Kennebec County Sheriff's Office, Kennebec County Sheriff's Office, Corrections Division, and the Kennebec County Correctional Facility are all departments and offices controlled by the County Commissioners.

165)      Defendant Bob Devlin is the chief administrative official responsible for the administration of The Kennebec County Sheriff's Office, Kennebec County Sheriff's Office, Corrections Division, and the Kennebec County Correctional Facility.

166)      30-A M.R.S.A. §102  provides, "The county commissioners have final authority over the operation of all county offices by elected or appointed county officials, except in circumstances for which a County Personnel Board has been established under subchapter VII, article 2 with the powers and duties set forth in that article and in section 501. The county commissioners must act as a board and not on an individual basis in exercising this authority."

167)      30-A M.R.S.A. §102  establishes that the County Commissioners or the County Personnel Board has final authority over the operation of all county offices by elected or appointed county officials.

168)      30-A M.R.S.A. §101 charges the Commissioners of each county to "[p]erform all other duties required by law."

169)      To the best of Plaintiffs knowledge and belief, upon investigation, no County Personnel Board has been established in Kennebec County.

170)      The Kennebec County Sheriff's Office and the Kennebec County Sheriff's Office, Corrections Division fall within the scope of Kennebec County, the Kennebec County

Commissioners and Defendant Bob Devlin's authority and oversight by virtue of legislative action.

171)    Despite being under the authority and oversight of Kennebec County, the Kennebec County Commissioners, and Defendant Bob Devlin, the Defendants have had no significant oversight regarding the actions of the Kennebec County Sheriff's Office, its Corrections Division and/or the Kennebec County Correctional Facility.

172)    Despite being under the authority and oversight of Kennebec County, the Kennebec County Commissioners, and Defendant Bob Devlin, the Defendants have had no significant oversight regarding the criminal conspiracy and criminal activities they have and continue to perpetrate, the consequence of which has adversely affected the Plaintiff.

173)    Lewis had a "special relationship" with KCCF.  There was a great disparity in position and influence between the parties, marked by the supervision, control and authority they had daily over Lewis, thereby creating a special fiduciary relationship. Lewis was under their charge and control as an inmate at the facility.

174)    Each of the events complained of transpired in the Kennebec County Correctional Facility which is owned and operated by Kennebec County.

175)    Kennebec County, the Kennebec County Commissioners, and Defendant Bob Devlin knew or should have known that they can exercise control over the employees of the Kennebec County Sheriff's Office, and Kennebec County Correctional Facility by virtue of their statutory authority to administer all departments and office controlled by the County Commissioners.

176)     Kennebec County, the Kennebec County Commissioners, and Defendant Bob Devlin knew or should have known of the necessity to exercise control over the Kennebec County Sheriff's Office and the Kennebec County Sheriff's Office, Corrections Division since it is statutorily mandated.

177)     Without any investigation into the practices of the Kennebec County Correctional Facility, Kennebec County, the Kennebec County Commissioners, and Defendant Bob Devlin permitted the criminal acts and violations of Maine State law to be perpetrated upon Lewis.

178)     Kennebec County, the Kennebec County Commissioners, and Defendant Bob Devlin, in dereliction of their duties, have failed or otherwise refused to perform all other duties required by law by allowing the Defendants to engage in excessive use of force and criminal activity to the detriment of Lewis.

179)     As a proximate result of the Defendants dereliction of duty, Lewis has suffered humiliation, mental anguish and emotional distress.

180)     As a result of those actions and consequent harms, Lewis has suffered such damages in an amount to be proved at trial.

181)     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Lewis's rights.

182)     Lewis requests relief as described in the Prayer for Relief below.

**COUNT SEVEN – NEGLIGENT SUPERVISION – Correctional Health Partners**

183)     Lewis reasserts and realleges the allegations in the above paragraphs as though fully stated herein.

184)    Defendant Vigue was, at all times relevant to this Complaint, an employee of CHP.

185)    Defendant Vigue was only privileged to enter the premises of KCCF as an employee of CHP for the purpose of, among other tasks, providing health care services including the dispensing of medications to inmates.

186)    CHP, as employer of Defendant Vigue, knew or had reason to know it had the ability to control Defendant Vigue since it provides training, and the terms and conditions of employment for each of its employees and thus, has the ability to control the employment.

187)    CHP, as employer to Defendant Vigue, knew or should have known of the necessity and opportunity for exercising such control since CHP "work[s] with [its] clients as true partners to develop integrated programs that provide long-term solutions, ensure clinically appropriate care for incarcerated patients, and help correctional facilities comply with national standards." (CHP website).

188)    Defendant Vigue was notorious at KCCF for abuse of inmates.  CHP should have known of Defendant Vigue's abuse of inmates, however, due to its failure to properly oversee this employee, failed to learn of the necessity for exercising control over Defendant Vigue.

189)    As a proximate result of the Defendants negligent supervision of its employee, Lewis has suffered humiliation, mental anguish and emotional distress.

190)    As a result of those actions and consequent harms, Lewis has suffered such damages in an amount to be proved at trial.

191)     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Lewis's rights.

192)     Lewis requests relief as described in the Prayer for Relief below.

## COUNT EIGHT – NEGLIGENT SUPERVISION – CRISIS & COUNSELING CENTER

193)     Lewis reasserts and realleges the allegations in the above paragraphs as though fully stated herein.

194)     Defendant Fearon was, at all times relevant to this Complaint, an employee of CCC.

195)     Defendant Vigue was only privileged to enter the premises of KCCF as an employee of CCC for the purpose of, among other tasks, providing mental health services and counseling.

196)     CCC, as employer of Defendant Fearon, knew or had reason to know it had the ability to control Defendant Fearon since it provides training, and the terms and conditions of employment for each of its employees and thus, has the ability to control the employment.

197)     CCC, as employer to Defendant Fearon, knew or should have known of the necessity and opportunity for exercising such control since CCC "is a knowledgeable and collaborative partner that takes the lead to strengthen relationships with other providers in order to reduce gaps in service, eliminate redundancie, and improve outcomes for facilities, inmates and communities." (CCC website; spelling error in original).

198)     CCC should have known of Defendant Fearon's dereliction of duties, however, due to its failure to properly oversee this employee, failed to learn of the necessity for exercising control over Defendant Fearon.

199)     As a proximate result of the Defendants negligent supervision of its employee, Lewis has suffered humiliation, mental anguish and emotional distress.

200)     As a result of those actions and consequent harms, Lewis has suffered such damages in an amount to be proved at trial.

201)     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Lewis's rights.

202)     Lewis requests relief as described in the Prayer for Relief below.

**COUNT NINE – VICARIOUS LIABILITY – Correctional Health Partners**

203)     Lewis reasserts and realleges the allegations in the above paragraphs as though fully stated herein.

204)     Defendant Vigue was at all times pertinent to this action an employee of Correctional Health Partners.

205)     Defendant Vigue was hired by CHP to perform nursing/medical services to Kennebec County Correctional Facility ("KCCF").

206)     The dispensing of medication to inmates is a function within the scope of Defendant Vigue's employment with CHP.

207)     The events complained of by Plaintiff occurred within the authorized time and space limits of Defendant Vigue's employment, that is, at Kennebec County Correctional Facility during times determined for dispensing of medications to inmates.

208)     The conduct of Defendant Vigue was actuated by a purpose to serve CHP.

209)     Force was used by Defendant Vigue, however, it was not unexpectable by CHP since CHP authorized Defendant Vigue to have "special privileges" in performing her

responsibilities on behalf of CHP, which was communicated to staff at KCCF by Defendants Alexander and Campbell.

210)     As a proximate result of the Defendants vicarious liability of its employee, Lewis has suffered humiliation, mental anguish and emotional distress.

211)     As a result of those actions and consequent harms, Lewis has suffered such damages in an amount to be proved at trial.

212)     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Lewis's rights.

213)     Lewis requests relief as described in the Prayer for Relief below.

### COUNT TEN – VICARIOUS LIABILITY – CRISIS & COUNSELING CENTER

214)     Lewis reasserts and realleges the allegations in the above paragraphs as though fully stated herein.

215)     Defendant Fearon, at all times relevant to this Complaint, was an employee of Crisis and Counseling Center (hereinafter referred to as "CCC").

216)     Defendant Fearon was hired by CCC to provide integrated health care services to inmates at KCCF, more specifically, mental health and counseling.

217)     Attending to the mental well-being of inmates while they are classified as "special management" by KCCF is a function of Defendant Fearon's employment with CCC.

218)     The events complained of by Plaintiff occurred within the authorized time and space limits of Defendant Fearon's employment, that is, at Kennebec County Correctional Facility during a situation of crisis which developed while Defendant Vigue was dispensing medication to Plaintiff Lewis.

219)     The conduct of Defendant Fearon was actuated by a purpose to serve CCC.

220)     As a proximate result of the Defendants vicarious liability of its employee, Lewis has suffered humiliation, mental anguish and emotional distress.

221)     As a result of those actions and consequent harms, Lewis has suffered such damages in an amount to be proved at trial.

222)     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Lewis's rights.

223)     Lewis requests relief as described in the Prayer for Relief below.

## PRAYER FOR RELIEF

Wherefore, Lewis respectfully prays that this Honorable Court:

A. Enter Judgment in her favor in an amount that is reasonable in the premises, plus prejudgment and post-judgment interest;

B. Award her reimbursement of her costs of suit, including reasonable attorney fees and other litigation costs incurred in bringing this action pursuant to 42 U.S.C. §1988 and/or 5 M.R.S.A. §4683;

C. Award exemplary and punitive damages; and

D. Grant such other and further relief that the Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS IN HER COMPLAINT SO TRIABLE AS OF RIGHT.**

Dated at Waterville, Maine, this 7th Day of November 2016.

/s/ Jackie T. DiGiacomo, Esq

*Jackie T. DiGiacomo, Esq.*

Jackie T. DiGiacomo, Esq.
Maine Bar Number 004620
Attorney for Plaintiffs
PO Box 1837
Waterville, ME 04903
(207) 361-4700