## UNITED STATES DISTRICT COURT
### District of Maine

| | |
|---|---|
| BRANDEE A. LEWIS,<br><br>      Plaintiff<br><br>vs.<br><br>KENNEBEC COUNTY<br>KENNEBEC COUNTY SHERIFF'S OFFICE,<br>KENNEBEC COUNTY SHERIFF'S OFFICE,<br>      CORRECTIONS DIVISION,<br>KENNEBEC COUNTY CORRECTIONAL FACILITY,<br>KENNEBEC COUNTY COMMISSIONERS being PATSY G.<br>CROCKETT, Kennebec County Commissioner, District 1 in her<br>individual and official capacity; NANCY G. RINES, District 2 in<br>her individual and official capacity; and GEORGE M. JABAR, II,<br>District 3 in his individual and official capacity.<br>BOB DEVLIN, in his official and individual capacity,<br>RYAN REARDON, in his official and individual capacity,<br>MARSHA ALEXANDER, in her official and individual capacity,<br>CALISTA CAMPBELL, in her official and individual capacity,<br>LAURA BRIGGS, in her official and individual capacity,<br>GARY FEARON, in his official and individual capacity,<br>DAN CYR in his official and individual capacity,<br>HANNAH SIMMONS, in her official and individual capacity,<br>MYRA GAGNON, in her official and individual capacity,<br>COURTNEY PIERCE, in her official and individual capacity,<br>SERGEANT DARLING, in his official and individual capacity,<br>OFFICER BRYANT, in his official and individual capacity,<br>CORRECTIONAL HEALTH PARTNERS, LLC,<br>KIMBERLY VIGUE, in her official and individual capacity,<br>CRISIS & COUNSELING CENTERS, INC, PHYSICIAN<br>HEALTH PARTNERS, LLC.<br><br>      Defendants | DOCKET No. 1:16-cv-00559-JAW<br><br><br><br>**AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

NOW COMES Plaintiff Brandee A. Lewis, by and through her attorneys, David S.

Flores, Esq., Flores & Flores Law, PLLC and Jackie T. DiGiacomo, Esq., hereby brings this

action under 42 U.S.C.§1983, 4th, 8th, 14th Amendments of the United States Constitution; 42

U.S.C. § 1985; Article 1, §6-A of the Maine State Constitution; Maine Revised Statutes Title 34-

A, § 3049; Maine Human Rights Act, Ch. 337B, §§ 4681 – 4685;

Common Law Negligence, Assault and Battery, Negligent Supervision and Intentional Infliction of Emotional Distress to redress her civil and legal rights, and alleges as follows:

## PRELIMINARY STATEMENT

1.   While being housed at the Kennebec County Correctional Facility as a detainee awaiting trial, Brandee A. Lewis (hereinafter referred to as "Lewis") at the time of all alleged violations was a 21-year-old female with a mental disability.  On approximately December  21, 2015, Lewis was brutally sexually assaulted and physically assaulted by nurse Kim Vigue and multiple staff members at the Kennebec County Correctional Facility by way of multiple stabbings with a needle and inserting an object into Lewis anus. The incident was captured on video and audio recordings by the jail's security camera system. The Kennebec County Correctional Facility personnel did not experience any disciplinary action.  Subsequently, Lewis was subjected to excessive use of force, OC sprayings on a regular basis and being Tasered by correctional facility personnel.  The Defendants destroyed the video and audio tape of the assault and battery, failing to preserve it even though the Defendants knew that the evidence would be essential in a criminal and civil proceeding.  The gross sexual assault, assault and battery and subsequent use of excessive force on numerous occasions by correctional facility personnel violated Lewis' Federal and State constitutional rights, Civil Rights and resulted in substantial physical pain and suffering, severe mental & emotional and psychological harms.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction pursuant to the following statutes:

   a.  28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States.  In this Complaint, there arise claims concerning questions of Federal laws, specifically, the Fourth Amendment, Eighth Amendment and the Fourteenth Amendment to the United States Constitution;  and 42 U.S. Code §1983; 42 U.S.C.§ 1985; and

b.  28 U.S.C. §1367, which gives district courts supplemental jurisdiction over state law claims against all parties that are so related to claims in this action within the original jurisdiction of the court that they form part of the same case or controversy.  In this Complaint, the State law claims are violations of the Maine Constitution, Maine Civil Rights Act; Maine Human Rights Act and Common Law Torts of Negligence, Assault & Battery, Negligent Supervision and Intentional Infliction of Emotional Distress; and

c.  This action seeks to vindicate rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution, and Article I Section 6-A of the Maine Constitution. It is brought pursuant to the Federal Civil Rights Act, 42 U.S.C. §1983.

3.   This Court has supplemental jurisdiction over the state civil rights action pursuant to 28 U.S.C. § 1367 because the state action stems from the same common nucleus of operative facts as the federal civil rights claim.

4.   Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) & (2) because:

a.  Defendants Ryan P. Reardon, Marsha Alexander, Calista Campbell, Laura Briggs, Dan Cyr, Bob Devlin, Patsy G. Crockett, Nancy G. Rines, Hannah Simmons, Courtney Pierce, George M. Jabar, II, Andrew Darling, Darrell Bryant and Kimberly Arlene Vigue are subject to personal jurisdiction in this judicial district and each of the Defendants resides, is found, has an agent, or transacts their affairs in this District;

b.  Kennebec County, the Kennebec County Sheriff's Office and its Corrections

    c.   Division, the Kennebec County Correctional Facility, and Crisis and Counseling Centers are located wholly within this district and transact their affairs in this District;

    d.   Correctional Health Partners and Physician Health Partners, LLC transact substantial affairs in this District;

    e.   Michael Mitchell, Kim Lane, Jennifer Mix, Timothy Canham, and Deborah A. Reynolds are subject to personal jurisdiction in this judicial district and each of the Defendants resides, is found, has an agent, or transacts their affairs in this District; and

    f.   The events that give rise to this Complaint occurred in this district.

## JURY TRIAL DEMAND

5.   Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## PARTIES

6.   Plaintiff Brandee A. Lewis ("Lewis") is a resident of Maine. At all times relevant to this complaint, Lewis was housed at the Kennebec County Correctional Facility in the State of Maine, in the custody of the Kennebec County Sheriff's Office and the Kennebec County Sheriff's Office, Corrections Division, as pretrial detainee.

7.   Defendant Kennebec County is a county organized in the State of Maine in 1799, whose principal place of business is 125 State Street, 2nd Floor, Town of Augusta, County of Kennebec, and State of Maine 04330 and is a duly organized entity of local government under Maine law. Defendant Kennebec County transacts its affairs in the County of Kennebec. Defendant Kennebec County transacts its affairs in the County of Kennebec.

8.   Defendant Kennebec County Sheriff's Office is a department within the County of Kennebec which operates the Kennebec County Correctional Facility and has a principal office located at 125 State Street, Town of Augusta, County of Kennebec, State of Maine 04330.

Defendant Kennebec County Sheriff's Office (hereinafter "KCSO") is a duly organized entity of local government under Maine law and Kennebec County code or ordinance. Defendant Kennebec County Sheriff's Office transacts its affairs in the County of Kennebec. Defendant Kennebec County Sheriff's Office transacts its affairs in the County of Kennebec.

9.   Defendant Kennebec County Sheriff's Office, Corrections Division is a division of Kennebec County Sheriff's Office and is part of the County of Kennebec local government which is operated by the KCSO.  It has a principal location of 115 State Street, Town of Augusta, County of Kennebec, State of Maine 04330 and is a duly organized entity of local government under Maine law and Kennebec County code or ordinance. Defendant Kennebec County Sheriff's Office, Corrections Division transacts its affairs in the County of Kennebec. Defendant Kennebec County Sheriff's Office, Corrections Division transacts its affairs in the County of Kennebec.

10. Defendant Kennebec County Correctional Facility (hereinafter "KCCF") is part of the Corrections Division of the County of Kennebec which is operated by the KCSO and has a principal location of 115 State Street, Town of Augusta, County of Kennebec, State of Maine 04330 and is a duly organized entity of local government under Maine law and Kennebec County code or ordinance. Defendant Kennebec County Correctional Facility transacts its affairs in the County of Kennebec. Defendant KCCF transacts its affairs in the County of Kennebec.

11. Defendant Kennebec County Commissioners (hereinafter "Commissioners") are the County Commissioners.  The Kennebec County Commissioners have a principal location of 125 State Street, 2nd Floor, Augusta, Maine 04330.  Each Kennebec County Commissioner, Patsy G. Crockett, Nancy G. Rines and George Jabar, II is being sued in their individual and official capacities.  Pursuant to 30-A M.R.S.A. §61(1), each county commissioner is required to reside in the district which they represent.  Each commissioner is therefore required to reside in Kennebec County.  At all times pertinent to this action, the Commissioners acted under color of state law.

Each of the Defendant Kennebec County Commissioners reside, are found, has an agent, or transacts their affairs in Kennebec County.

12. Defendant Bob Devlin is the County Administrator for Kennebec County with a principal office location of 125 State Street, 2nd Floor, Augusta, Maine 04330. He is a resident of the Town of Gardiner, County of Kennebec, State of Maine. Defendant Devlin is being sued in his individual and official capacity. Defendant Devlin resides, is found, has an agent, or transacts his affairs in Kennebec County.

13. Defendant Ryan P. Reardon was the interim-Sheriff for the KCSO. Defendant Reardon resides at 268 Country Club Road in the Town of Oakland, County of Kennebec, State of Maine. At all times pertinent to this action, he was a supervisor and/or high-ranking official at KCSO with management authority over the Plaintiffs and the Defendants. He is being sued in both his official and individual capacities. At all times pertinent to this action, Defendant Reardon acted under color of state law. Defendant Reardon resides, is found, has an agent, or transacts his affairs in Kennebec County.

14. Defendant Captain Marsha J. Alexander was the Corrections Administrator for KCSO and is a resident of Oakland, Maine, County of Kennebec. At all times pertinent to this action, she was a supervisor and/or high-ranking official at KCSO with management authority over the Plaintiffs. She is being sued in both her official and individual capacities. At all times pertinent to this action, Defendant Alexander acted under the color of state law. Defendant Alexander resides, is found, has an agent, or transacts her affairs in Kennebec County.

15. Defendant Calista Campbell was a Lieutenant for KCSO who resides at 5 Pine Needle Alley, Town of Wayne, County of Kennebec, State of Maine. She is being sued in both her official and individual capacities. At all times pertinent to this action, Defendant Campbell acted under color of state law. Defendant Campbell resides, is found, has an agent, or transacts her affairs in Kennebec County.

16. Defendant Laura Briggs was a Lieutenant for KCSO and resides at 70 Blaine Road, Town of Hallowell, County of Kennebec, State of Maine.   She is being sued in both her official and individual capacities.  At all times pertinent to this action, Defendant Briggs acted under the color of state law. Defendant Briggs resides, is found, has an agent, or transacts her affairs in Kennebec County.

17. Defendant Gary Fearon is a mental health worker who is employed by Crisis & Counseling Centers which holds a contract with Kennebec County, the Kennebec County Sheriff's Office and its Corrections Division and/or Kennebec County Correctional Facility.  Defendant Fearon has a principal business location at 10 Caldwell Road, Town of Augusta, County of Kennebec, State of Maine.  At all times pertinent to this action, Defendant Fearon acted under color of state law. Defendant Fearon resides, is found, has an agent, or transacts his affairs in Kennebec County.

18. Defendant Darling is a Sergeant for KCSO and is a resident of Maine, town unknown to Plaintiff at this time.  It is the Plaintiff's belief that he resides in Kennebec County.  He is being sued in both his official and individual capacities.  At all times pertinent to this action, Defendant Darling acted under color of state law. Defendant Darling resides, is found, has an agent, or transacts his affairs in Kennebec County.

19. Defendant Bryant is a Corrections Officer for KCSO and is a resident of Maine, town unknown to Plaintiff at this time.  It is the Plaintiff's belief that he resides in Kennebec County. He is being sued in both his official and individual capacities.  At all times pertinent to this action, Defendant Bryant acted under color of state law. Defendant Bryant resides, is found, has an agent, or transacts his affairs in Kennebec County.

20. Defendant Dan Cyr is a Sergeant for KCSO and is a resident of Maine, town unknown to Plaintiff at this time.  It is the Plaintiff's belief that he resides in Kennebec County.  He is being sued in both his official and individual capacities.  At all times pertinent to this action, Defendant

Cyr acted under color of state law. Defendant Cyr resides, is found, has an agent, or transacts his affairs in Kennebec County.

21. Defendant Hannah Simmons is a Corrections Officer for KCSO and is a resident of Maine, town unknown at this time.  It is Plaintiff's belief that she resides in Kennebec County.  She is being sued in both her official and individual capacities.  At all times pertinent to this action, Defendant Simmons acted under color of state law.  Defendant Simmons resides, is found, has an agent, or transacts her affairs in Kennebec County.

22. Defendant Courtney Pierce is a Corrections Officer for KCSO and is a resident of Maine, town unknown at this time.  It is Plaintiff's belief that she resides in Kennebec County.  She is being sued in both her official and individual capacities.  At all times pertinent to this action, Defendant Pierce acted under color of state law.  Defendant Pierce resides, is found, has an agent, or transacts her affairs in Kennebec County.

23. Defendant Myra Gagnon is a Corrections Officer for KCSO and is a resident of Maine, town unknown at this time.  It is Plaintiff's belief that she resides in Kennebec County.  She is being sued in both her official and individual capacities.  At all times pertinent to this action, Defendant Gagnon acted under the color of state of law.  Defendant Gagnon resides, is found, has an agent, or transacts her affairs in Kennebec County.

24. Crisis & Counseling Centers provides integrated health services to correctional facilities in Maine.  Crisis & Counseling Centers has a principal business location of 10 Caldwell Road, Town of Augusta, County of Kennebec, State of Maine.  At all times pertinent to this action, Defendant Crisis & Counseling Centers employed Defendant Fearon to provide mental health counseling services to the inmates at the Kennebec County Correctional Facility.  Crisis & Counseling Centers is found, has an agent, or transacts affairs in Kennebec County.

25. Defendant Kimberly Arlene Vigue was a registered nurse in the State of Maine who, at all

times relevant to this Complaint, was employed by Correctional Health Partners which has a principal place of business located at 1125 17th Street Suite 1000, City of Denver, State of Colorado 80202.  At all times relevant to this Complaint, Defendant Vigue provided health services as a registered nurse to Kennebec County, the Kennebec County Sheriff's Office and its Corrections Division and/or Kennebec County Correctional Facility.  It is the Plaintiff's belief that Defendant Vigue resides at 256 Town Farm Road, Town of Oakland, County of Kennebec, State of Maine. Defendant Vigue resides, is found, has an agent, or transacts her affairs in Kennebec County.

26. Defendant Correctional Health Partners is a for profit company organized under the laws of the State of Colorado and has a principal place of business located at 1125 17th Street Suite 1000, City of Denver, State of Colorado 80202.  Defendant CHP employed Defendant Vigue during times relevant to this Complaint.  CHP is found, has an agent, or transacts affairs in Kennebec County.

27. Defendant Physician Health Partners, LLC is for profit company organized under the laws of the State of Colorado and has a principal business address of 1125 17th Street, Suite 1010, City of Denver, State of Colorado 80202.  Defendant Physician Health Partners, LLC is the parent company of Defendant Correctional Health Partners.

**STATEMENT OF FACTS**

28. This complaint arises from an incident that occurred on or about December 21st of 2015 in the "Intake" department at Kennebec County Correctional Facility (hereinafter referred to as "KCCF").

29. Lewis was then a pretrial detainee, awaiting court proceedings.

30. This complaint also arises from the subsequent treatment Lewis received as an inmate of

KCCF during the period of time from December 22, 2015 through October 24, 2016, with brief periods where she was not incarcerated.  Lewis was housed at KCCF for a probation violation from late August 2016 to October 24, 2016.

31. Lewis is a 21-year-old female who suffers from multiple psychological conditions stemming from extreme physical, emotional, mental and sexual childhood abuse.

32. The psychological conditions Lewis has been diagnosed with include Post Traumatic Stress Disorder, Autism, Oppositional Defiant Disorder, and some form of personality disorder.  These conditions cause Lewis to behave, in large part, in a child-like manner.

33. Kimberly Arlene Vigue is a registered nurse at the Maine Board of Nursing under registration number RN51269 (hereinafter referred to as "Vigue").  Vigue was employed by Correctional Health Partners, LLC (hereinafter referred to as "CHP") and under contract with KCCF to provide medical services to inmates housed at the jail.

34. Gary Fearon, at the time of the events complained of by Plaintiff, was a Mental Health Social Worker, registered in the State of Maine with the Department of Professional and Financial Regulation, Office of Professional and Occupational Regulation, Board of Social Work Licensure under License No. LSX14707.  Gary Fearon, at the time was an employee of Crisis & Counseling Centers, INC.

35. Lewis sought intervention and treatment from Crisis and Counseling Centers (hereinafter referred to as "CCC") from as early as 2004 for multiple issues related to her psychological and behavioral challenges.

36. Lewis' long standing history of psychological challenges is documented in CCC's records.

37. Defendants Fearon, Mitchell (CEO), Lane (President) and CCC knew or should have known about these psychological conditions, Lewis's childhood history of severe abuse, and the subsequent behaviors resulting from the psychological conditions.

38. Defendants Fearon and CCC on a daily basis worked on site at the KCCF to assist KCCF

with Inmates that are suffering from mental health issues.

39. The staff at Kennebec County in its Corrections Division knew or should have known about these psychological conditions, Lewis's childhood history of severe abuse, and the subsequent behaviors resulting from the psychological conditions because CCC is the mental health counseling contractor with Kennebec County, Kennebec County Correctional Facility.

40. Inmates are screened at the KCCF for mental and physical conditions at the time they are admitted as inmates at KCCF.

41. Plaintiff has recently discovered that KCCF and CHP permitted Timothy Canham, to prescribe medications or otherwise dispense medications to inmates housed at KCCF without obtaining the proper licensure requirements for prescribing or otherwise dispensing medications.

42. It has now been discovered that KCCF medical staff member and CHP employee, Timothy Canham was disciplined by the Board of Licensure in Medicine for acts related to the events complained of in this action.

43. Prior to December 21st of 2015, Defendant Alexander and Defendant Campbell, during a supervisors meeting, informed management officers that Vigue had "special privileges" at the jail and that they might see Vigue do things that were "not normally done" while providing medical services to inmates.

44. Because of this instruction, staff at KCCF to include CHP employees saw nurse Vigue do things they knew were in violation of inmate rights and in violation of Kennebec County policies and procedures for the protection of inmate rights and for the safety of staff and inmates.

45. Due to KCCF Supervisors instructions, staff at KCCF to include CHP employees saw nurse Vigue dispense medications to inmates without doctor's orders by increasing dosages, and dispensing medications that were not prescribed by a doctor.

46. Due to KCCF Supervisors instructions, staff at KCCF to include CHP employees saw nurse

Vigue consult with her mother who was also a nurse at a different facility for advice on dispensing medications.

47. Nurse Vigue's mother had no authority, qualification or licensing to prescribe medication or otherwise medically assess the needs of inmates housed at KCCF.

48. KCCF and CHP practice and custom of allowing nurse Vigue "special privileges" directly lead to the violation of Lewis' rights and damaged her mentally, physically and emotionally.

49. Kennebec County did not have Crisis Intervention Training and staff and personnel at the KCCF were not properly trained to deal with inmates with mental disabilities, such as Plaintiff.

50. KCCF personnel were not properly trained to deal with inmates, with mental disabilities, such as Plaintiff.

51. On December 21, 2015, KCCF employee and trainee Courtney Pierce assisted other KCCF employees restrain and force medication upon Lewis, without Lewis' consent and absent a court order, as part of her training at KCCF.

52. On December 21, 2015 Courtney Pierce was a new correctional officer, in training, she was being trained that personnel can force medication upon an inmate against their will and absent a court order.

53. On December 21, 2015, present during the Lewis torture were Sergeants, a Staff Sergeant, and other supervisory personnel.

54. The KCCF Supervisor's instruction came from the high-ranking officials in the chain of command, KCCF staff complied with this instruction and permitted and assisted nurse Vigue in the violation of Lewis' rights, in violation of licensing protocols, in violation of the Maine Department of Corrections Standards, in violation of KCCF policies and procedures, and in violation of the laws of the United States and State of Maine.

55. KCCF medical staff member and CHP employee nurse Vigue continued medications for

Inmate Stanchfield without doctor's orders on the advice of her mother so that Stanchfield would not "detox".

56. On December 21st of 2015, Lewis refused her medication while medications were being dispensed by nurse Vigue.

57. At the time of the events complained of herein, Maine law required authorization in the form of a Superior Court order to dispense medication against an inmate's will.

58. Maine Department of Corrections standards and Kennebec County policies and procedures forbid dispensing medication after refusal by an inmate but the custom and practices of KCCF allowed KCCF correctional officers and nurse Vigue to intimidate and instill fear upon inmates to force them to take medication against their will.

59. A person with mental illness residing in a mental health unit of a correctional facility that provides mental health care and treatment in the State of Maine may be given medication for the mental illness without the consent of the person if upon application by the chief administrative officer of the facility to the Superior Court of the county in which the correctional facility is located, with notice to the person being held who has a right to Counsel and a defense, a hearing is held and the Court finds by clear and convincing evidence that:

A.   The person is a person with mental illness;

B.  As a result of the mental illness, the person poses a likelihood of serious harm;

C.  The medication has been recommended by the facility's treating psychiatrist as treatment for the person's mental illness;

D.  The recommendation for the medication has been supported by a professional who is qualified to prescribe the medication and who does not provide direct care to the person;

E.  The person lacks the capacity to make an informed decision regarding medication;

F.  The person is unable or unwilling to consent to the recommended medication;

13

G. The need for the recommended medication outweighs the risks and side effects; and

H. The recommended medication is the least intrusive appropriate treatment option.

60. Plaintiff, Brandee A. Lewis, has previously been diagnosed to be mentally ill.

61. Plaintiff, Brandee A. Lews, was given medication without her consent.

62. Defendants, did not obtain any recommendation by the facility's treating psychiatrist to administer any medication to Brandee A. Lewis on the day of the incident on approximately December 21, 2015.

63. Defendants, did not file an application in the Superior Court for Kennebec County by the Chief Administrative Officer of the facility, requesting that Brandee A. Lewis be administered medication without her consent.

64. The Superior Court for Kennebec County never received an application to involuntary medicate Brandee A. Lewis and therefore never found by clear and convincing evidence that:

A) Brandee A. Lewis is a person with mental illness;

B) Brandee Lewis had a mental illness, that posed a likelihood of serious harm;

C) The medication administered to Brandee Lewis had been recommended by the facility's treating psychiatrist as treatment for Brandee Lewis' mental illness;

D) The recommendation for the medication had been supported by a professional who was qualified to prescribe the medication and who didn't provide direct care to Brandee Lewis;

E) Brandee Lewis lacked the capacity to make an informed decision regarding medication;

F) Brandee Lewis was unable or unwilling to consent to the recommended medication;

G) The need for the medication administered to Brandee Lewis on approximately December 21, 2015 outweighed the risks and side effects; and

H) The medication administered to Brandee Lewis was the least intrusive appropriate treatment option.

65. Brandee A. Lewis, was never given a Notice of a Hearing on an Application for Medication

without Consent, as no application was ever filed and no hearing was ever held as required under the Maine State Constitution, Title 34-A, Chapter 3: Subchapter 1, Article 2, Section 3049.

66. The Defendants did not obtain a judicial order before forcibly inserting a suppository in to Brandee A. Lewis' rectum and stabbing Lewis five times with syringes and injecting some fluid like substance into her body, without Lewis consent.

67. Nurse Vigue did not have a prescription or doctors order to forcibly insert a suppository into Lewis rectum or stab her five times with syringes injecting a fluid like substance in to Lewis' body on approximately December 21, 2015, without Lewis consent.

68. Nurse Vigue did not have Brandee A. Lewis' consent to administer any medication upon her on approximately December 21, 2015.

69. Brandee A. Lewis, refused any and all medications by Nurse Vigue and all Kennebec County employees during the incident where she was stabbed five times with syringes and a suppository was forcibly inserted in to her rectum against her will and without her consent and while she screamed in fear and told the Defendants they were hurting her and screamed at them to stop on approximately December 21, 2015.

70. Upon Lewis's refusal of medication, Vigue threatened and placed fear upon Lewis in order to unlawfully force medication upon Lewis, with the assistance of Kennebec County employees.

71. KCCF staff to include Hannah Simmons, Courtney Pierce, Myra Gagnon and others grabbed Lewis arms and body and strapped Lewis to a restraint chair, which rendered Lewis unable to move her arms, legs and body which were secured by restraints.

72. KCCF medical staff member and CHP employee nurse Vigue asked Lewis if she was going to take her medication.  Lewis stated "no" and was screaming and crying and afraid and told the Defendants they were hurting her and screamed at them to stop.

73. KCCF medical staff member and CHP employee nurse Vigue stabbed a syringe into Lewis'

arm, injecting an unknown substance into Lewis' body, without Lewis' consent and without a doctor's prescription all while Brandee Lewis was screaming and crying and telling them to stop and that they were hurting her.

74. KCCF medical staff member and CHP employee nurse Vigue, determined to force Lewis to take medication, went to the medical supply room, and retrieved four more syringes.

75. Upon returning to the intake area where Lewis was being restrained in a chair.  Nurse Vigue again asked Lewis if she would agree to take her medication.  Lewis again refused and stated "no" and was screaming and crying and screaming at them to stop.  Vigue then stabbed Lewis with a syringe injecting an unknown substance into Lewis' body without Lewis' consent and without a doctor's prescription.

76. KCCF medical staff member and CHP employee nurse Vigue, again asked Lewis if she would agree to take her medication.  Lewis replied "no" again, at which time Vigue called Lewis a "fucking bitch" and stabbed Lewis with a third syringe injecting an unknown substance into Lewis body without her consent and without a doctor's prescription all while Brandee Lewis was screaming and crying and telling them to stop and that they were hurting her.

77. KCCF medical staff member and CHP employee nurse Vigue, again threatened to stab Lewis with a syringe if Lewis did not take her medication.  Lewis refused to take her medication telling Vigue "no".  Vigue for a fourth time stabbed Lewis with a syringe, as Lewis tried to move away and stated "no, no".  Vigue for the fourth time stabbed Lewis with a syringe and injected an unknown substance into Lewis' body without Lewis' consent and without a doctor's prescription all while Brandee Lewis was screaming and crying and telling them to stop and that they were hurting her.

78. KCCF medical staff member and CHP employee nurse Vigue, placing fear into Lewis again threatened to stab Lewis with a syringe if she did not agree to take her medication.  Lewis refusing to take her medication plead with Vigue to not stab her again.  Vigue for the fifth time

stabbed Lewis with a syringe while calling Lewis a "fucking bitch" and telling her that she is
done playing games with Lewis.  Vigue for the fifth time injected some unknown substance into
Lewis body without Lewis consent and without a doctor's prescription all while Brandee Lewis
was screaming and crying and afraid and telling the Defendants to stop and that it hurt and they
were hurting her.

79. Defendant Gary Fearon was present from the beginning of the Lewis torture and told
Brandee Lewis to take her medication or nurse Vigue was going to stick her with a syringe.

80. Defendant Gary Fearon employee of CCC had a special relationship with Brandee Lewis
as Gary Fearon was helping Lewis with her mental health condition.

81. It is believed that these syringes contained medication that was not prescribed for Lewis
and which had a highly sedative property.

82. The medication injected into Lewis without her consent, was not ordered by a physician
or prescribed for Lewis.

83. In an extremely threatening manner, Vigue had placed the syringes in front of Lewis and
aggressively attempted to force Lewis into taking her prescribed oral medication by menacingly
threatening to stab Lewis with the syringes all while Brandee Lewis was screaming and crying and
screaming at the Defendants.

84. The five stabbings by syringe as Lewis was tied down to a chair, as described above
resulted in the mental and physical torture of Brandee Lewis by the KCCF Staff, Vigue, Gary
Fearon and other CHP medical staff.

85. KCCF Staff and CHP employees present at the time of the stabbings of Lewis were Myra
Gagnon, Hanna Pierce Simmons, Courtney Pierce, nurse Vigue, Sgt. Cyr, Sgt. Slaney, SSGT.
Briggs, Gary Fearon and other KFFC and CHP staff.

86. Lewis was in physical pain, scared, mentally and emotionally traumatized by the torture as
described above.

87. At all times during the stabbings and injections of the unknown substances, Lewis recoiled in an attempt to avoid the injections.  Lewis was also heard stating, "No, no, no."

88. While the stabbings and injections of the unknown substance into Lewis body, Lewis was screaming, yelling and crying in pain, begging Vigue to stop.

89. Vigue ran out of syringes after the five stabbings and injections and Lewis continued her refusal to take the medication. Vigue told Lewis she was done playing with her.  Vigue with the assistance of KCCF personnel, forced Lewis in to the shower room while she was still in the restraint chair.

90. Defendant Gary Fearon, mental health worker, told Brandee Lewis that if she did not take her oral medication then nurse Vigue was going to insert a suppository into her body.

91. In the shower room, KCCF Correctional Officers Gagnon, Simons and Pierce grabbed Lewis and placed hand cuffs on her arms and placed shackles on Lewis ankles.

92. KCCF Correctional Officers Simmons, Gagnon and Courtney Pierce forced Lewis to the concrete floor.

93. KCCF Correctional Officers Simmons and Gagnon held Lewis down on the concrete floor, face down, as they helped nurse Vigue rip Lewis clothes off her upper body and pull them down below her buttocks.

94. Correctional Officer Courtney Pierce looked on as part of her training as the clothes were ripped off Lewis in the shower room.

95. KCCF Correctional Officers helped CHP employee nurse Vigue hold Lewis down on the concrete shower room floor against Lewis will in order to force Lewis to take medication without her consent.

96. Lewis was yelling at the KCCF Correctional Officers Gagnon, Simmons, Pierce and nurse Vigue to stop it and yelling "no" "no" "no",  and was screaming and crying which could be heard outside in the hallway through a 300-pound door.

97. Nurse Vigue with the assistance of KCCF Correctional Officers Gagnon and Simmons, spread Lewis naked buttocks, as Correctional Officer Courtney Pierce looked on as part of her training.

98. Nurse Vigue with her fingers forcibly inserted an object into Lewis rectum, without Lewis consent and without a doctor's prescription, as KCCF Correctional Officers Gagnon and Simmons held Lewis, face down, on the cold concrete floor.

99. Brandee Lewis could be heard in the hallway screaming "it hurts", "stop", "no", "no", as she cried.

100.    While this was occurring in the search and shower room, it was reported to SSGT. Briggs that an inmate might be receiving medication against her will.  Sgt. Slaney heard moans and screaming coming from the search and shower room which was secured by a 300 lb metal door.  Sgt. Slaney requested Briggs investigate.  SSGT. Briggs went into the search and shower room and saw Lewis on the ground.

101.    Lewis did nothing to provoke or to justify the sexual assault perpetrated by nurse Vigue, KCCF Correctional Officers Gagnon, Courtney Pierce and Simmons with the acquiescence and/or assistance of Sgt. Cyr, Gary Fearon, SSGT. Briggs and other KCCF Staff and CHP Staff.

102.    At no time did Brandee Lewis threaten harm towards nurse Vigue, Sgt. Cyr, Gary Fearon, SSGT. Briggs, herself or anyone else.

103.    Nurse Vigue, Sgt. Cyr, Gary Fearon and SSGT. Briggs did nothing to temper the severity of their attack; in fact, the violence of their attack escalated even as Lewis became more incapacitated.

104.    Brandee Lewis was kept in the restraining chair until lock up.

105.    The events described in paragraphs 56 through 104 of this complaint were captured on videotape and audio recording by the KCCF security camera system.

106.     Based on information and belief, the video recording and audio recording have been destroyed by Kennebec County / KCCF / KCCF Staff.

107.     The next day, approximately December 22, 2015, a mental health worker not involved in the torture of Lewis incident attended a visit with Lewis.

108.     Upon entering Lewis's cell, the mental health worker found Lewis in a fetal position, broken and cowering in fear.

109.     The mental health worker asked Lewis what was wrong and Lewis proceeded to tell her that, "they put something up my butt and it hurt me".  Brandee Lewis was sobbing uncontrollably while the mental health worker attempted to soothe her.

110.     Defendant, Gary Fearon, Mental Health Worker stated that Brandee Lewis did not consent to taking the medication during the incident where Brandee Lewis, on December 21, 2015 was restrained in a chair and stabbed five times with a syringe by nurse Vigue.

111.     Defendant, Gary Fearon, Mental Health Worker stated that Brandee Lewis on December 21, 2015, did not consent to taking the medication by way of a suppository.

112.     Defendant, Gary Fearon, Mental Health Worker stated that the incident involving Brandee Lewis on December 21, 2015, was wrong, where Brandee Lewis was injected five times with a syringe and suppository inserted without Brandee Lewis consent.

113.     Sgt. Cyr stated that Brandee Lewis did not consent to medication being administered into her body on December 21, 2015, during the incident involving Brandee Lewis as described above.

114.     Defendant, Correctional Officer Hannah Simmons stated that the incident involving Brandee Lewis on December 21, 2015, where Brandee Lewis was injected five times with a syringe, against Lewis consent, was wrong and that Officer Hannah Simmons should have stopped it.

115.     Defendant, Correctional Officer Hannah Simmons stated that Brandee Lewis did

not consent to having medication administered upon her, when on December 21, 2015, nurse Vigue injected Brandee Lewis five times with a syringe.

116.     Defendant, Correctional Officer Hannah Simmons stated that the incident involving Brandee Lewis on December 21, 2015, where Brandee Lewis was handcuffed, legs shackled, forced to the concrete floor in the shower room, clothes removed to expose Lewis buttocks and a suppository inserted into Lewis body was wrong and that Officer Simmons should have stopped it.

117.     Defendant, Correctional Officer Hannah Simmons stated that Brandee Lewis did not consent to a suppository being inserted into her rectum, on December 21, 2015, while Brandee Lewis was being restrained in the shower room.

118.     Defendant, Correctional Officer Hannah Simmons stated that Brandee Lewis was crying after the suppository was inserted into Lewis rectum by nurse Vigue, on December 21, 2105.

119.     Defendant, Correctional Officer Myra Gagnon stated that the incident involving Brandee Lewis on December 21, 2015, where Brandee Lewis was injected five times with a syringe, against Lewis consent, was wrong and that Officer Myra Gagnon should have stopped it.

120.     Defendant, Correctional Officer Myra Gagnon stated that Trainee Courtney Pierce was shadowing Officer Gagnon for the purpose of training Courtney Pierce, during the incident involving Brandee Lewis on December 21, 2015, where Brandee Lewis was injected five times with a syringe, against Lewis consent.

121.     Defendant, Correctional Officer Myra Gagnon stated that Brandee Lewis did not consent to having medication administered upon her, when on December 21, 2015, nurse Vigue injected Brandee Lewis five times with a syringe.

122.     Defendant, Correctional Officer Myra Gagnon stated that the incident involving

Brandee Lewis on December 21, 2015, where Brandee Lewis was handcuffed, legs shackled, forced to the concrete floor in the shower room, clothes removed to expose Lewis buttocks and a suppository inserted into Lewis body was wrong and that Officer Gagnon should have stopped it.

123.    Defendant, Correctional Officer Myra Gagnon stated that Brandee Lewis did not consent to a suppository being inserted into her rectum, on December 21, 2015, while Brandee Lewis was being restrained in the shower room.

124.    Defendant, Correctional Officer Myra Gagnon stated that Brandee Lewis was crying after the suppository was inserted into Lewis rectum by nurse Vigue, on December 21, 2105.

125.    Defendant, Correctional Officer Myra Gagnon stated that Brandee Lewis was crying and trying to move away from nurse Vigue as she was being stabbed by the syringes.

126.    Defendant, Correctional Officer Myra Gagnon stated that Brandee Lewis was yelling, crying and saying "no" when nurse Vigue inserted a suppository into Lewis rectum.

127.    An investigation was conducted by SSGT. Laura Briggs who was involved in the incident and who had the responsibility and authority to prevent the torture of Brandee Lewis.

128.    Despite the fact that multiple KCCF personnel reported that the medication was given against Lewis's will, SSGT. Laura Briggs determined that the charge was unfounded and that Lewis consented to the injections and suppository.

129.    As a result of SSGT. Laura Briggs investigation, no KCCF personnel were reprimanded or disciplined for the sexual assault and physical assault upon Lewis.

130.    When the Office of Professional Review (OPR) became aware of the situation, a separate Internal Affairs investigation was conducted by Al Morin.

131.    As a result of the OPR investigation being completed a third investigation was conducted.

132.    The third investigation was a criminal investigation and was conducted by Officer

Bourque, resulting in criminal charges brought against nurse Kimberley Vigue for two counts of assault.

133.    Since the December 2015 incident, Lewis has suffered severe emotional trauma, anxiety, depression, sleeplessness and fear of her surroundings.

134.    On October 12, 2016, Lewis was assessed by Dr. Baeder as a forensic psychologist of the Department of Health and Human Services.  Lewis was determined to be incompetent to stand trial and court ordered to be transferred to a psychiatric unit for evaluation and treatment.

135.    In the 11 months that followed, before her transfer to Riverview Psychiatric Center, Lewis was subjected to multiple incidents of excessive use of force by KCCF Staff.

136.    On October 5, 2016, Lewis was given a "spork" to eat her dinner with.  Sergeant Darling (hereinafter referred to as "Darling"), knowing that Lewis was classified as special management and should not have a spork, approached Lewis and made demand for the spork. Lewis replied she would give him the spork when she was done eating dinner, unknowing why the demand was being made and just simply wanting to finish her dinner.

137.    Darling then pulled out his Electronic Device (Taser) and pointed it at Lewis which sent her into a panic.  She immediately became compliant and put up her hands to indicate that she posed no threat.

138.    Darling retrieved the spork and subsequently ordered Lewis to be strip searched, although there was no justification to conduct a strip search.

139.    The random strip searches performed on Lewis without justification subjected her to humiliation and further compounded her trauma.

140.    On October 8, 2016, Lewis was using a piece of chalk given to her by Officer Pizzutto.  Lewis was not using the chalk in any threatening manner or causing any disturbance with the chalk.

141.    Defendants Correctional Health Partners and Physician Health Partners failed to

properly train, retain and supervise its employees and ensure its employees had the proper licenses and credentials to work as health care providers in the State of Maine.

142.      At approximately 8:25 p.m., Defendant Bryant demanded Lewis hand him the chalk.  Lewis, confused as to why Bryant was demanding the chalk, and given that she has psychological disorders that cause her to act in a child-like manner, put the chalk in the top part of her suicide smock.

143.      The suicide smock is a heavy, padded garment which is secured on the person with Velcro.  An inmate wearing a suicide smock does not have any clothing underneath it.  It is a dress-like garment and the only result of putting the chalk in her smock would be for it to fall out onto the ground from the bottom.

144.      In an effort to retrieve a piece of chalk from Lewis, Defendant Bryant violently slammed her against the wall, threw her to the ground and pinched her arm with such force as to cause a large, hand-sized bruise on her left arm.

145.      During this violent attack on Lewis, she sustained a bruise on her face from Defendant Bryant's boot hitting her across the cheek.

146.      Multiple officers, corporals and sergeants at KCCF regularly used OC spray on Lewis as a means of punishment and/or in a threatening way to place fear upon Lewis.  When Lewis was OC sprayed, KCCF Staff would make her sit with the OC chemical on her face and eyes until the last legal time limit to shower her off or remove the OC spray.

147.      Multiple officers, corporals and sergeants at KCCF often used a Taser on Lewis as a means of punishment and/or in a threatening way to discipline or reprimand Lewis.

148.      Multiple officers, corporals and sergeants at KCCF often used other means to punish or discipline Lewis by strapping her to the restraint board for extended periods of time, cuffing her to benches for extended periods of time, including during night hours to cause her lack

of sleep and to deprive her of sleep by intentionally flashing her with a flash light upon the face to rouse her from sleep for extended periods of time during overnight hours.

149.     Defendant SSGT. Briggs ordered that Lewis remain in a "suicide suit" and have no shoes despite the fact that Lewis was not suicidal.  Oftentimes, the suit given to Lewis was either extremely large or too small so that it would irritate her body (Velcro rubbing against her skin).

150.     Lewis, through counsel, made four separate grievances regarding excessive use of force and other complaints.

151.     Without conducting a good faith investigation into the matter, KCCF Supervisors determined that there was not enough evidence of the events complained of.

152.     During a visit with her client, counsel requested the results of each of the grievances.  KCCF did not provide counsel with the results of the grievances.

153.     Counsel was advised that the documents requested could not be found and that they must have been destroyed.

154.     Subsequently, KCCF Correctional Officers working at Intake saw the documentation counsel requested, days after it was reported to counsel to be "missing".

155.     All the events complained of by Lewis in her grievances were captured on videotape and audio by the KCCF security camera system.

156.     The Kennebec County Defendants to include the Commissioners fostered a custom and practice that allowed the KCCF Correctional Officers, KCCF Supervisors, KCCF Medical Staff, CCC Staff and CHP Staff to violate the inmates Federal and State Civil Rights, specifically Brandee Lewis Rights.

157.     The Kennebec County Defendants to include the Commissioners fostered a custom and practice that failed to train KCCF Correctional Officers, KCCF Supervisors, KCCF Medical Staff, CCC Staff and CHP Staff on protecting inmates Federal and State Civil Rights, specifically Brandee Lewis Rights.

158.     The Kennebec County Defendants to include the Commissioners fostered a custom and policy that failed to train KCCF Correctional Officers, KCCF Supervisors, KCCF Medical Staff, CCC Staff and CHP Staff, in the areas of, inmates rights to refuse medication, use of force and due process which was the moving force behind the deprivation of Brandee Lewis' Constitutional and Civil Rights.

159.     KCCF Staff, KCCF Medical Staff and CHP Staff walked away and failed to intervene even though they knew nurse Vigue was going to stab Brandee Lewis with multiple syringes against Brandee Lewis will.

160.     KCCF Staff, KCCF Medical Staff, CCC Staff and CHP Staff walked away and failed to intervene even though they knew nurse Vigue was going to forcibly insert a suppository in to Brandee Lewis' rectum without Brandee Lewis consent.

161.     All Defendants were acting in concert and under the color of law at all times relevant to all actions and inactions as described in paragraphs 28 through 160.

## COUNT I

### Violations of Plaintiff's Civil Rights actionable under 42 U.S.C. § 1983 To Be Free From Excessive, Unreasonable, and Unjustified Force in Violation of the 4th and 14th Amendments

162.     The above facts are restated in this Count and incorporated herein.

163.     The Defendants actions and inactions as asserted in the above facts as stated in paragraphs 28 through 161 violated Brandee Lewis' Civil Rights to be from excessive, unreasonable and unjustified force in violation of the 4th and 14th amendments of the United States Constitution.   The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in the conduct as stated in paragraphs 28 through 161.

164.     The Defendants grabbed Brandee Lewis and as she screamed and cried in fear and told them they were hurting her, the Defendants forced Brandee Lewis into a restraining chair, strapping her legs, arms and torso to the restraining chair, so that Brandee Lewis could not

26

move.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

165.    The Defendants in concert with nurse Vigue threatened to stab Lewis with a syringe if Lewis did not take her oral medication.  The Defendants were acting within the scope of their employment and under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

166.    The Defendants in concert with nurse Vigue placed Lewis in fear and stabbed Lewis five times with five syringes and injected an unknown liquid substance into Lewis body, against Brandee Lewis' will and while Brandee Lewis screamed and cried and screamed in pain that it hurt and screamed at them to stop.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

167.    The Defendants in concert with nurse Vigue grabbed Brandee Lewis and forced her into the shower room, where the Defendants handcuffed, shackled her legs, forced Lewis to the concrete floor and ripped her clothes off to expose Lewis naked buttocks as Brandee Lewis screamed and cried in fear and screamed they were hurting her and screamed in pain at them to stop and continued to scream "NO, NO, NO."  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

168.    The Defendants in concert with nurse Vigue held Brandee Lewis face down on the concrete floor and spread Lewis' buttocks cheeks and nurse Vigue with her fingers inserted an object or suppository into Brandee Lewis Rectum, against Brandee Lewis' will as Brandee Lewis screamed and cried in fear and pain and told them it hurt and screamed at them to stop.

The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

169.    The Defendants in concert placed Brandee Lewis in a suicide smock, OC sprayed her and mentally and physically abused her without justification.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

170.    The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employees to disregard Brandee Lewis civil rights and perpetrate a torture, assault and battery and sexual assault upon Brandee Lewis.  The Defendants were acting within the scope of their employment and under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

171.    The Defendants had a policy, custom and practice in place that created and fostered the environment at the Kennebec County Correctional Facility that it was ok to administer medication upon inmates without their consent and without a Court Order, which allowed Defendants to disregard inmates, specifically Brandee Lewis, Civil Rights.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

172.    The Defendants have violated Brandee Lewis Civil Rights as described in this Count, causing Brandee Lewis to be injured by way of pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded.  The Defendant employers are vicariously liable.

## COUNT II

### Violations of Plaintiff's Civil Rights actionable under 42 U.S.C. § 1983 for Violation of the Fourth and Fourteenth Amendments for Gross Sexual Assault on the Plaintiff

173.     The above facts are restated in this Count and incorporated herein.

174.     The Defendants actions and inactions as asserted in the above facts as stated in paragraphs 28 through 172 violated Brandee Lewis Civil Rights to be free from gross sexual assault in violation of the 4th and 14th amendments of the United States Constitution.

175.     The Defendants in concert with nurse Vigue grabbed Brandee Lewis and forced her into the shower room, where the Defendants handcuffed, shackled her legs, forced Lewis to the concrete floor and ripped her clothes off to expose Lewis naked buttocks as Brandee Lewis screamed and cried in fear and screamed they were hurting her and screamed at them to stop. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

176.     The Defendants in concert with nurse Vigue held Brandee Lewis face down on the concrete floor and spread Lewis' buttocks cheeks and nurse Vigue with her fingers inserted an object or suppository into Brandee Lewis Rectum, against Brandee Lewis' will.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

177.     The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employees to disregard Brandee Lewis civil rights and perpetrate a torture, assault and battery and sexual assault upon Brandee Lewis. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

178.     The Defendants had a policy, custom and practice in place that created and

fostered the environment at the Kennebec County Correctional Facility that it was ok to administer medication upon inmates without their consent and without a Court Order, which allowed Defendants to disregard inmates, specifically Brandee Lewis, Civil Rights. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

179.    The Defendants have violated Brandee Lewis Civil Rights as described in this Count, causing Brandee Lewis to be injured by way of humiliation, pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, suicidal thoughts and economic loss, for which Lewis should be compensated. Litigation costs and attorney fees should be awarded. The Defendant employers are vicariously liable.

## COUNT III

### Violations of Plaintiff's Civil Rights actionable under 42 U.S.C. § 1983 For Violation of the Eighth Amendment of the United States Constitution Against Cruel and Unusual Punishment

180.    The above facts are restated in this Count and incorporated herein.

181.    The Defendants actions and inactions as asserted in the above facts as stated in paragraphs 28 through 179 violated Brandee Lewis Civil Rights to be free from cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. The Defendants were acting under the color of law.

182.    The Defendants grabbed Brandee Lewis and forced her into a restraining chair, strapping her legs, arms and torso so that Brandee Lewis could not move. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

183.    The Defendants in concert with nurse Vigue threatened to stab Lewis with a syringe if Lewis did not take her oral medication. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and

the conduct as stated in paragraphs 28 through 161.

184.    The Defendants in concert with nurse Vigue placed Lewis in fear and stabbed Lewis five times with five syringes and injected an unknown liquid substance into Lewis body, against Lewis will.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

185.    The Defendants in concert with nurse Vigue grabbed Brandee Lewis and forced her into the shower room, where the Defendants handcuffed, shackled her legs, forced Lewis to the concrete floor and ripped her clothes off to expose Lewis naked buttocks.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

186.    The Defendants in concert with nurse Vigue held Brandee Lewis face down on the concrete floor and spread Lewis' buttocks cheeks and nurse Vigue with her fingers inserted an object or suppository into Brandee Lewis Rectum, against Brandee Lewis' will.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

187.    The Defendants in concert placed Brandee Lewis in a suicide smock, OC sprayed her and mentally and physically abused her without justification.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

188.    The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employees to disregard Brandee Lewis civil rights and perpetrate a torture, assault and battery and sexual assault upon Brandee Lewis.  The Defendants were acting within the scope of their

employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

189.     The Defendants had a policy, custom and practice in place that created and fostered the environment at the Kennebec County Correctional Facility that it was ok to administer medication upon inmates without their consent and without a Court Order, which allowed Defendants to disregard inmates, specifically Brandee Lewis, Civil Rights.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

190.     The Defendants have violated Brandee Lewis Civil Rights as described in this Count, causing Brandee Lewis to be injured by way of pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded.  The Defendant employers are vicariously liable.

## <u>COUNT IV</u>

## <u>Violations of Plaintiff's Civil Rights actionable under 42 U.S.C. § 1983 For Violations of the Plaintiff's Fourteenth Amendment Right to Due Process and the Right to Refuse Medical Treatment</u>

191.     The above facts are restated in this Count and incorporated herein.

192.     The Defendants actions and inactions as asserted in the above facts as stated in paragraphs 28 through 190 violated Brandee Lewis Civil Rights, depriving her of her right to refuse medication and her right to Due Process in violation of the Fourteenth Amendment of the United States Constitution.   The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

193.     Defendants in concert unlawfully forced medication upon Brandee Lewis after she refused to take her oral medication on December 21, 2015.  The Defendants were

32

acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

194.    Defendants in concert deprived Brandee Lewis of her due process rights by not obtaining a Court Order before restraining her and forcing her to take medication against Lewis will and without her consent.  The Defendants were acting under the scope of their employment and were acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

195.    Defendants in concert deprived Brandee Lewis of her due process rights by not allowing her to have a hearing before the Superior Court before forcing medications upon her body without her consent and against her will.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

196.    The Defendants grabbed Brandee Lewis and forced her into a restraining chair, strapping her legs, arms and torso so that Brandee Lewis could not move.  The Defendants were acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

197.    The Defendants in concert with nurse Vigue threatened to stab Lewis with a syringe if Lewis did not take her oral medication.  The Defendants were acting within the scope of their employment and were acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

198.    The Defendants in concert with nurse Vigue placed Lewis in fear and stabbed Lewis five times with five syringes and injected an unknown liquid substance into Lewis body, against Lewis will.  The Defendants were acting within the scope of their employment and were acting under the color of law when they engaged in this conduct and the conduct as stated in

paragraphs 28 through 161.

199.     The Defendants in concert with nurse Vigue grabbed Brandee Lewis and forced her into the shower room, where the Defendants handcuffed, shackled her legs, forced Lewis to the concrete floor and ripped her clothes off to expose Lewis naked buttocks.  The Defendants were acting within the scope of their employment and were acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

200.     The Defendants in concert with nurse Vigue held Brandee Lewis face down on the concrete floor and spread Lewis' buttocks cheeks and nurse Vigue with her fingers inserted an object or suppository into Brandee Lewis Rectum, against Brandee Lewis' will.  The Defendants were acting within the scope of their employment and were acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

201.     The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employees to disregard Brandee Lewis civil rights and perpetrate a torture, assault and battery and sexual assault upon Brandee Lewis.  The Defendants were acting within the scope of their employment and were acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

202.     The Defendants had a policy, custom and practice in place that created and fostered the environment at the Kennebec County Correctional Facility that it was ok to administer medication upon inmates without their consent and without a Court Order, which allowed Defendants to disregard inmates, specifically Brandee Lewis, Civil Rights.  The Defendants were acting within the scope of their employment and were acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 28 through 161.

203.     The Defendants have violated Brandee Lewis Civil Rights as described in this Count, causing Brandee Lewis to be injured by way of pain and suffering, physical and mental

distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal

thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and

attorney fees should be awarded.  The Defendant employers are vicariously liable.

<u>**COUNT V**</u>

<u>**Violation of Plaintiff's Due Process Rights Under Article 1, Section 6-A of the Maine State Constitution and in Violation of Title 34-A, § 3049 Involuntary Medication of Person with Mental Illness (Effective at time of Defendants Violation)**</u>

204.        The above facts are restated in this Count and incorporated herein.

205.        The Defendants actions and inactions as asserted in the above facts as stated in

paragraphs 28 through 203 violated Brandee Lewis Civil Rights, depriving her of her right to

Due Process, in violation of Article 1, Section 6-A of the Maine State Constitution and in

violation of Maine Title 34-A, § 3049 Involuntary Medication of Person with Mental Illness.

The Defendants were acting under the color of law.

206.        The Defendants grabbed Brandee Lewis and forced her into a restraining chair,

strapping her legs, arms and torso so that Brandee Lewis could not move.

207.        The Defendants in concert with nurse Vigue threatened to stab Lewis with a

syringe if Lewis did not take her oral medication.

208.        The Defendants in concert with nurse Vigue placed Lewis in fear and stabbed

Lewis five times with five syringes and injected an unknown liquid substance into Lewis body,

against Lewis will.

209.        The Defendants in concert with nurse Vigue grabbed Brandee Lewis and forced

her into the shower room, where the Defendants handcuffed, shackled her legs, forced Lewis to

the concrete floor and ripped her clothes off to expose Lewis naked buttocks.

210.        The Defendants in concert with nurse Vigue held Brandee Lewis face down on

the concrete floor and spread Lewis' buttocks cheeks and nurse Vigue with her fingers inserted

an object or suppository into Brandee Lewis Rectum, against Brandee Lewis' will.

211.    The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employees to disregard Brandee Lewis civil rights and perpetrate a torture, assault and battery and sexual assault upon Brandee Lewis.

212.    The Defendants had a policy, custom and practice in place that created and fostered the environment at the Kennebec County Correctional Facility that it was ok to administer medication upon inmates without their consent and without a Court Order, which allowed Defendants to disregard inmates, specifically Brandee Lewis, Civil Rights.

213.    The Defendants have violated Brandee Lewis Civil Rights as described in this Count, causing Brandee Lewis to be injured by way of pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded.  The Defendant employers are vicariously liable.

## COUNT VI

### Violation of Plaintiff's Civil Rights Under the Maine Human Rights Act, Chapter 337, §§4551-4634; Chapter 337A:  Protection from Harassment §4651-4661; and Chapter 337B: Civil Rights Act, § 4681- 4685

214.    The above facts are restated in this Count and incorporated herein.

215.    The Defendants actions and inactions as asserted in the above facts as stated in paragraphs 28 through 213 violated Brandee Lewis Civil Rights, depriving her of her right to be free from harassment, physical and mental abuse and torture, which is a violation of Plaintiff's Civil Rights under the Maine Human Rights Act, Chapter 337, §§ 4551-4634; Protection from Harassment §4651-4661; and Chapter 337B, Civil Rights Act, § 4681- 4685.  The Defendants were acting under the color of law.

216.    The Defendants grabbed Brandee Lewis and forced her into a restraining chair,

36

strapping her legs, arms and torso so that Brandee Lewis could not move.

217.     The Defendants in concert with nurse Vigue threatened to stab Lewis with a syringe if Lewis did not take her oral medication.

218.     The Defendants in concert with nurse Vigue placed Lewis in fear and stabbed Lewis five times with five syringes and injected an unknown liquid substance into Lewis body, against Lewis will.

219.     The Defendants in concert with nurse Vigue grabbed Brandee Lewis and forced her into the shower room, where the Defendants handcuffed, shackled her legs, forced Lewis to the concrete floor and ripped her clothes off to expose Lewis naked buttocks.

220.     The Defendants in concert with nurse Vigue held Brandee Lewis face down on the concrete floor and spread Lewis' buttocks cheeks and nurse Vigue with her fingers inserted an object or suppository into Brandee Lewis Rectum, against Brandee Lewis' will.

221.     The Defendants in concert placed Brandee Lewis in a suicide smock, OC sprayed her and mentally and physically abused her without justification.

222.     The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employees to disregard Brandee Lewis civil rights and perpetrate a torture, assault and battery and sexual assault upon Brandee Lewis.

223.     The Defendants had a policy, custom and practice in place that created and fostered the environment at the Kennebec County Correctional Facility that it was ok to administer medication upon inmates without their consent and without a Court Order, which allowed Defendants to disregard inmates, specifically Brandee Lewis, Civil Rights.

224.     The Defendants have violated Brandee Lewis Civil Rights as described in this Count, causing Brandee Lewis to be injured by way of pain and suffering, physical and mental

distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded. The Defendant employers are vicariously liable.

<u>**COUNT VII**</u>

<u>**Conspiracy Under 42 U.S.C. §1985 to Interfere with the Plaintiff's Civil Rights by Conspiring to Destroy Evidence of Defendants Civil rights Abuses against the Plaintiff, for the Purpose of Impeding, Hindering, Obstructing and Defeating the Plaintiff's Right to Secure Equal Protection of the Law**</u>

225.     The above facts are restated in this Count and incorporated herein.

226.     The Defendants actions and inactions as asserted in the above facts as stated in paragraphs 28 through 224 violated Brandee Lewis Civil Rights, in that Defendants conspired to destroy evidence of defendants' civil rights abuses against the Plaintiff, for the purpose of impeding, hindering, obstructing and defeating the Plaintiff's right to secure equal protection of the law.   The Defendants were acting under the color of law.

227.     The KCCF intake area is equipped with multiple cameras that capture video and audio for the purpose of obtaining evidence for the purpose of having a record of what events have occurred and for the safety of the staff and inmates.

228.     The incidents as described above, which violated Brandee Lewis' civil rights were captured on video and audio recordings, to include the five stabbings with five syringes, without Lewis consent and against her will.

229.     The incident as described above, which violated Brandee Lewis' civil rights, in that Defendants inserted an object and or suppository into Brandee Lewis rectum, without Lewis consent and against her will, was captured through audio recording, as Brandee Lewis was screaming and crying which could be heard loud and clear in the hallway.

230.     Defendants in concert destroyed the audio and video of Defendant's civil rights abuses against Brandee Lewis, where Defendant's unlawfully stabbed Brandee Lewis five times

with five syringes against Brandee Lewis consent and against her will.  The described violations occurred after Brandee Lewis refused to take her oral medication.

231.     Defendants in concert destroyed the audio recording of Defendant's civil rights abuses against Brandee Lewis, where Defendant's unlawfully dragged Brandee Lewis into the shower room and inserted an object or suppository into Brandee Lewis' rectum without her consent and against her will.  The described civil violations occurred after Brandee Lewis refused to take her oral medication.

232.     Defendants knew that the video and audio recordings should have been preserved for the purpose of having a record and evidence of the actual incidents.  KCCF conducted an investigation the day after the December 21, 2015 incident and viewed the video and audio.

233.     The recordings would have shown that the Defendants in concert with nurse Vigue threatened to stab Lewis with a syringe if Lewis did not take her oral medication.

234.     The recordings would have shown the Defendants in concert with nurse Vigue placed Lewis in fear and stabbed Lewis five times with five syringes and injected an unknown liquid substance into Lewis body, against Lewis will.

235.     The Defendants in concert with nurse Vigue grabbed Brandee Lewis and forced her into the shower room, where the Defendants handcuffed, shackled her legs, forced Lewis to the concrete floor and ripped her clothes off to expose Lewis naked buttocks.

236.     The Defendants in concert with nurse Vigue held Brandee Lewis face down on the concrete floor and spread Lewis' buttocks cheeks and nurse Vigue with her fingers inserted an object or suppository into Brandee Lewis Rectum, against Brandee Lewis' will.

237.     The audio recordings captured Brandee Lewis screaming and yelling "no" "no" and "it hurts" as the object and or suppository was been forced into Lewis rectum.

238.     The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled

employees to disregard Brandee Lewis civil rights and perpetrate a torture, assault and battery and sexual assault upon Brandee Lewis.

239.     The Defendants had a policy, custom and practice in place that created and fostered the environment at the Kennebec County Correctional Facility that it was ok to administer medication upon inmates without their consent and without a Court Order, which allowed Defendants to disregard inmates, specifically Brandee Lewis, Civil Rights.

240.     The Defendants have violated Brandee Lewis Civil Rights as described in this Count, causing Brandee Lewis to be injured by way of pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded.  The Defendant employers are vicariously liable.

## COUNT VIII

## Common Law Negligence

241.     The above facts are restated in this Count and incorporated herein.

242.     The Defendants owed a duty to Brandee Lewis to not assault her, to not administer medication upon her body without her consent and to not violate her civil rights.  The Defendants breached their duty owed to Brandee Lewis, by way of their actions and inactions as asserted in the above facts as stated in paragraphs 28 through 240, and Defendants breach of their duty harmed Brandee Lewis and Defendants breach of their duty owed to Brandee Lewis is the proximate cause of Brandee Lewis' injuries as described above.

243.     The Defendants owed a duty to Brandee Lewis as an inmate at KCCF to properly train and supervise the KCCF Staff, CCC Staff and CHP Staff.  Defendant's breach of their duty harmed Brandee Lewis and Defendant's breach of their duty owed to Brandee Lewis is the proximate cause of Brandee Lewis' injuries as described above.

244.     The Defendants had a special relationship with Brandee Lewis and Defendants owed a duty to Brandee Lewis to intervene and protect Brandee Lewis from being stabbed five times with five syringes and protect Brandee Lewis from being held down while a suppository was being forcibly inserted into Brandee Lewis' rectum, without her consent and against her will.  Brandee Lewis was harmed physically and emotionally due to Defendant's breach of duty. Defendant's breach of duty is the proximate cause of Brandee Lewis' injuries as described above.

245.     The Defendants negligence as described in paragraphs 28 through 244 and in this Count, caused Brandee Lewis to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded.  The Defendant employers are vicariously liable.

## COUNT IX

## Common Law Assault and Battery

246.     The above facts are restated in this Count and incorporated herein.

247.     The Defendants committed multiple assaults and batteries upon Brandee Lewis as stated in paragraphs 28 through 245.

248.     The Defendants as stated above, grabbed Brandee Lewis without her consent and forced her into a restraining chair, strapping her legs, arms and torso so that Brandee Lewis could not move, while Brandee Lewis screamed and cried in fear and told them to stop and that they were hurting her.

249.     The Defendants as stated above, in concert with nurse Vigue threatened to stab Lewis with a syringe if Lewis did not take her oral medication as Brandee Lewis cried in fear.

250.     The Defendants as stated above, in concert with nurse Vigue placed Lewis in fear and stabbed Lewis five times with five syringes and injected an unknown liquid substance into

Lewis body, without Lewis consent and against her will.

251.       The Defendants assaults and batteries perpetrated upon Brandee Lewis as described in paragraphs 28 through 250 and in this Count, caused Brandee Lewis to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded. The employer Defendants are vicariously liable.

## COUNT X

## Common Law Assault and Battery

252.       The above facts are restated in this Count and incorporated herein.

253.       The Defendants committed multiple assaults and batteries upon Brandee Lewis as stated in paragraphs 28 through 251.

254.       The Defendants as described above, in concert with nurse Vigue grabbed Brandee Lewis and forced her into the shower room, where the Defendants handcuffed, shackled her legs, forced Lewis to the concrete floor and ripped her clothes off to expose Lewis naked buttocks, without Lewis consent and against her will.

255.       The Defendants as described above, in concert with nurse Vigue held Brandee Lewis face down on the concrete floor and spread Lewis' buttocks cheeks and nurse Vigue with her fingers inserted an object or suppository into Brandee Lewis Rectum, without Brandee Lewis consent and against Brandee Lewis' will, all while Brandee Lewis screamed and cried in fear and pain and told the Defendants, to stop and that they were hurting her.

256.       The Defendants in concert placed Brandee Lewis in a suicide smock, OC sprayed her and mentally and physically abused her without justification and without Brandee Lewis consent, all while Brandee Lewis screamed and cried in fear and pain and told the Defendants, to stop and that they were hurting her.

257.     The Defendants assaults and batteries perpetrated upon Brandee Lewis as described in paragraphs 28 through 256 and in this Count, caused Brandee Lewis to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded.  The Defendant employers are vicariously liable.

## COUNT XI

### Negligent Supervision, Retention and Training - Crisis & Counseling Center

258.     The above facts are restated in this Count and incorporated herein.

259.     Defendant Crisis & Counseling Center negligently trained, retained, and supervised Defendant Gary Fearon.  The acts and conduct of Defendant Fearon were the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the United States and Constitution of the State of Maine.

260.     The Defendant's negligent supervision, retention and training as described in paragraphs 28 through 257 and in this Count, caused Brandee Lewis to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded. The employer Defendants are vicariously liable.

## COUNT XII

### Negligent Supervision, Retention and Training
### Correctional Health Partners  -   Physician Health Partners

261.     The above facts are restated in this Count and incorporated herein.

262.     Defendants Correctional Health Partners and Physician Health Partners

negligently trained, retained, and supervised Defendant nurse Vigue and other CHP employees. The acts and conduct of Defendant nurse Kimberely Vigue were the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the United States and Constitution of the State of Maine.

263.     The Defendant's negligent supervision, retention and training as described in paragraphs 28 through 260 and in this Count, caused Brandee Lewis to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded. The employer Defendants are vicariously liable.

## COUNT XIII

### Negligent Supervision, Retention and Training – Kennebec County Correctional Facility Kennebec County Commissioners -Kennebec County Sheriff's Office

264.     The above facts are restated in this Count and incorporated herein.

265.     Defendants Kennebec County Correctional Facility, Kennebec County Commissioners and Kennebec County Sheriff's Office negligently trained, retained, and supervised Defendants Hannah Simmons, Laura Briggs, Sgt. Darling, Dan Cyr, Calista Campbell, Marsha Alexander, Ryan Reardon, Myra Gagnon and Courtney Pierce and other KFFC employees.  The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the United States and Constitution of the State of Maine.

266.     The Defendant's negligent supervision, retention and training as described in paragraphs 28 through 263 and in this Count, caused Brandee Lewis to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis should be compensated.  Litigation costs and attorney fees should be awarded.  The employer Defendants are vicariously liable.

## COUNT XIV

### Intentional Infliction of Emotional Distress

267.     The above facts are restated in this Count and incorporated herein.

268.     Defendants conduct, in assaulting and battering Plaintiff, by way of stabbing her five times with five syringes and injecting fluid into her body, without Plaintiff's consent and against her will while Brandee Lewis screamed and cried and told the Defendants "No" and screamed at them to stop and that they were hurting her, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency, and caused severe emotion distress to Plaintiff.

269.     Defendants conduct, in assaulting and battering Plaintiff, by way of restraining and forcibly inserting an object and or suppository into Plaintiff's rectum, without her consent and against her will while Brandee Lewis screamed "No" and was screaming and crying in fear and screaming at them to stop and that they were hurting her, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency, and caused severe emotion distress to Plaintiff.

270.     Defendants conduct, in discharging OC Spray into the face of Plaintiff at close range without provocation or justification, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds decency.

271.     The conduct of Defendants as described in paragraphs 28 through 266 and in this Count was the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the United States and her statutory and common law rights as guaranteed by the laws and Constitution of the State of Maine.

272.     The Defendants conduct as described above caused Brandee Lewis to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Lewis

should be compensated.  Litigation costs and attorney fees should be awarded.  The employer

Defendants are vicariously liable.

## COUNT XV

## RESPONDEAT SUPERIOR LIABILITY

273.      The above facts are restated in this Count and incorporated herein.

274.      The conduct of individual employee Defendants alleged herein occurred while

they were on duty, in uniform, in and during the course and scope of their duties and functions as

KCCF Staff, KCCF Medical Staff, CHP Staff, Physician Health Partners Staff, CCC Staff and

Kennebec County employees, and while acting as an agent, officer, servant and employee of

Defendants KCCF, CHP, CCC, Kennebec County Sheriff's Office, Kennebec County and

Physician Health Partners.  As a result, Defendants KCCF, CHP, CCC, Kennebec County

Sheriff's Office, Kennebec County and Physician Health Partners are liable to Plaintiff pursuant

to the common law doctrine of respondeat superior.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands the following relief jointly and severally against all of

the Defendants:

(1)  Compensatory damages in the amount to be determined by a jury;

(2)  Exemplary and Punitive damages in the amount to be determined by a jury;

(3)  The convening and empaneling of a jury to consider the merits of the claims herein;

(4)  Costs and interest and attorney's fees;

(5)  Past, present and future medical expenses;

(6)  Past, present and future pain and suffering damages;

(7)  Past, present and future emotional distress damages;

(8) GRANT any other such relief this Honorable Court deems equitable and just

46

Respectfully submitted,

Brandee A. Lewis
Plaintiff,

By her Attorneys,

Dated:  December 26, 2017                    /s/ David S. Flores

David S. Flores, Esq.
MA BBO No. 641558
P.O. Box 525
Lawrence, MA 01842
(617) 981-9453
legalpeople2@comcast.net

/s/ Jackie T. DiGiacomo, Esq.

Jackie T. DiGiacomo, Esq.
Maine Bar Number 004620
Attorney
PO Box 1837
Waterville, ME 04903
(207) 361-4700
Jackie.t.digiacomo@gmail.com

I David S. Flores, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated:  December 26, 2017                         /s/ David S. Flores

47