UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BRANDEE A. LEWIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:16-cv-00559-JAW |
| | ) | |
| KENNEBEC COUNTY, et al., | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON PHYSICIAN HEALTH PARTNERS, LLC'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY

In this matter, Plaintiff Brandee Lewis alleges that Defendants violated her civil rights while she was an inmate at the Kennebec County Jail in December 2015. The matter is before the Court on Defendant Physician Health Partners, LLC's Motion to Dismiss (ECF No. 108) and Plaintiff's Motion for Jurisdictional Discovery (ECF No. 116/118).

Through its motion, Defendant Physician Health Partners (PHP), one of twenty-five named defendants, contends the Court lacks personal jurisdiction over PHP. Plaintiff argues the record establishes the Court's personal jurisdiction over PHP; alternatively, Plaintiff requests the opportunity to conduct jurisdictional discovery.

Following a review of the record and after consideration of the parties' arguments, I recommend the Court grant the motion to dismiss and deny the request for jurisdictional discovery.[1]

---

[1] Although the motion for jurisdictional discovery would be within the authority of a Magistrate Judge, because the motion is directly related to the issues generated by the motion to dismiss, I issue a

## I. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal based on the lack of personal jurisdiction, i.e., a lack of jurisdiction over the person of the defendant. The burden is on the plaintiff to make a "prima facie showing" that personal jurisdiction exists, based on "evidence of specific facts" that meet all of the requirements of the forum state's long-arm statute and the Due Process Clause. *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp*, 960 F.2d 1080, 1089 (1st Cir. 1992) ("Pleasant St."); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). In other words, the "plaintiff must go beyond the pleadings and make affirmative proof." *Boit*, 967 F.2d at 675 (quoting *Chlebda v. H.E. Fortna & Bro. Inc.*, 609 F.2d 1022, 1024 (1st Cir. 1979)). When reviewing the plaintiff's prima facie showing, the court does not act as a fact finder, but instead "accepts properly supported proffers of evidence by plaintiff as true." *Id.*; *Snell v. Bob Fisher Enter., Inc.*, 115 F. Supp. 2d 17, 20 (D. Me. 2000). In addition, the court may credit facts asserted by the defendant that are not contradicted by the plaintiff's showing. *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010).[2]

---

recommended decision on both to permit the District Judge to apply the same standard of review to the decision on both motions.

[2] If the court concludes that the evidence is conflicting or the affidavits are not reliable, the court may conduct an evidentiary hearing and weigh the evidence to resolve evidentiary conflicts and concerns over the credibility of the affiants. Such a hearing may or may not involve the taking of testimony. *Boit*, 967 F.2d at 676.

**A. Jurisdictional Facts**

Plaintiff alleges that Defendant Kimberly Vigue, a nurse employed by Defendant Correctional Health Partners (CHP), an entity that provides contract medical services at the Kennebec County Correctional Facility, forcefully and without Plaintiff's consent, administered certain medication to Plaintiff when Plaintiff was an inmate at the Kennebec County Jail. (Amended Complaint ¶¶ 33, 73 – 78, ECF No. 97.) The other individual defendants were employed by either CHP or Kennebec County. Plaintiff alleges the other individual defendants assisted Defendant Vigue, failed to train Defendant Vigue, inadequately supervised Defendant Vigue, or engaged in independent acts in violation of Plaintiff's civil rights. (*E.g.*, *id.* ¶¶ 71, 84, 85, 90 – 98.) Plaintiff also alleges that CHP and PHP "failed to properly train, retain and supervise … employees and ensure … employees had the proper licenses and credentials to work as health care providers in the State of Maine." (*Id.* ¶ 141.)

PHP is a Colorado-based healthcare management company. (Affidavit of Ken Nielsen ¶¶ 2, 11, ECF No. 108-1.)[3] CHP is a subsidiary of PHP. (*Id.* ¶¶ 4, 7.) PHP first operated CHP as a division of PHP, beginning in 2005, and incorporated CHP in 2010. (Nielsen Aff. ¶¶ 3 – 4.) PHP owns 97% of CHP. (Notice of Interested Parties, ECF No. 25.)

CHP provides correctional healthcare and third party administration services for state and county correctional facilities. (*Id.* ¶ 6.) CHP is party to a contract through which

---

[3] Mr. Nielsen is the President and Chief Executive Officer of PHP and has been employed by PHP since 2004. (Affidavit of Ken Nielsen ¶ 1.)

CHP provides healthcare services at the Kennebec County Correctional Facility. PHP is not a party to the contract. (*Id.* ¶ 15.)

PHP and CHP have different boards of directors, different managers, and maintain separate bank accounts. (*Id.* ¶¶ 8, 10.) PHP has never conducted business in the State of Maine, has never advertised or solicited business in Maine, has never been subject to suit in Maine, and has never had any contracts for services with Maine based clients. (*Id.* ¶¶ 13, 14.) No employee of PHP has ever traveled to Maine on behalf of PHP. (*Id.* ¶ 12.) During the relevant time period, PHP did not hire, fire, train, or supervise any employees of CHP. (*Id.* ¶ 16.) PHP does not operate CHP and does not dictate CHP's business activities. (*Id.* ¶ 9.)

The Employee Handbook for PHP and CHP (Response Exs. 1 – 4, ECF Nos. 116-1, 116-2, 116-3, 116-4), begins with a welcome to new employees, signed by both the PHP President and the CHP President, which welcome refers to PHP and CHP collectively, as "our company" and "the company," and references employees as "our employees." (*Id.* at 5, PageID # 753.) In a section titled "Maine Specific Policies," the Handbook references PHP/CHP as the "covered employer" and instructs employees to apply for family medical leave through "Insperity's Leave and Disability Group." (*Id.* at 65, PageID # 754.) Eligibility requirements for Maine family medical leave include employment with "PHP/CHP for at least twelve (12) consecutive months." (*Id.*)

A provision titled "Maine Weapons" in the Handbook uses "the company" as a generic reference to both PHP and CHP. (*Id.* at 69, PageID # 758.) The Handbook's conflict of interest, at will employment, equal employment opportunity, and other sections

similarly refer to PHP/CHP as the employer or the company. (*Id.* at 10, 11, 15, 18, 19, 30, 42, 43, 46, PageID # 759 – 67.) The Handbook specifies that "the PHP Sr. Human Resource Generalist or an Insperity Human Resource Specialist" oversees the final step ("step three") of the company's "Complaint Resolution Procedure." (Ex. 4, ECF No. 116-4.)

PHP and CHP corporate reports submitted to the Colorado Secretary of State subsequent to the separate incorporation of CHP identify the same individual as the person who filed the reports, but identify different registered agents for each corporate entity. The reports also reflect that the registered agents have offices in the same building in Denver. (Response Exs. 8 & 9, ECF No. 116-8, 116-9.) PHP's online web assets include a patient portal that makes reference to certain CHP achievements in a company timeline. (Response Ex. 7, ECF No. 116-7.)

On December 3, 2010, PHP announced its promotion of Ken Nielsen to the position of President and CEO of PHP. The announcement included the statement that PHP's "current customers include … government entities directly funding healthcare services for certain populations." (Response Ex. 6, ECF No. 116-6.) On June 22, 2011, CHP announced the appointment of a new CEO and identified the media contact as a person with an email address domain of "phpmcs.com." (Response Ex. 5, ECF No. 116-5.)

**B. Discussion**

In the context of a federal claim, a federal district court's power to exercise jurisdiction over the person of a defendant is limited by the Due Process Clause of the Fifth Amendment. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).

5

"The exercise of personal jurisdiction may, consistent with due process, be either 'specific or case-linked' or 'general or all-purpose.'" *Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (1st Cir. 2015) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

In this case, Plaintiff argues PHP is amenable to suit in Maine based on specific jurisdiction, not general jurisdiction.[4] (Response at 3.) For specific jurisdiction to exist, three requirements must be met: (1) the claim must arise directly out of, or relate to, the defendant's forum-based activities; (2) the defendant's forum contacts must reflect "purposeful availment of the privileges of conducting activities in the forum state"; and (3) the exercise of jurisdiction must be reasonable. *Id.*

**1. Relatedness**

The relatedness requirement "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum." *Id.* (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995)). The First Circuit has "steadfastly reject[ed] the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum state seems attenuated and indirect." *Pleasant St.,* 960 F.2d at 1089.

Plaintiff argues the relatedness requirement is satisfied because PHP has a financial interest in CHP's commercial success in this forum; PHP and CHP share an employee

---

[4] General jurisdiction "exists when the litigation is not directly founded on the defendant's forum-based [activity], but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Pleasant St.*, 960 F.2d at 1088. Plaintiff evidently concedes that PHP's ownership of a controlling interest in CHP and the shared employee handbook do not reflect that PHP engages in "continuous and systematic" Maine-based activities.

handbook in which both entities are referred to as "the Company"; PHP and CHP share corporate offices, and at least one corporate agent; and CHP has one or more executive officers who have also been employed by PHP.

Contrary to Plaintiff's contention, PHP's ownership interest in CHP and its sharing of an employee handbook and employee policies or plans with CHP do not involve activity by PHP in the State of Maine that can fairly be regarded as giving rise to Plaintiff's action. The Employee Handbook, simply stated, does not convert CHP's employees into the employees of PHP, or negate the legal fact that PHP and CHP are separate corporate entities.

Although the Employee Handbook refers to PHP/CHP as "the company," PHP and CHP are legally distinct corporate entities. The record contains no evidence to suggest PHP hired Defendant Vigue or anyone else employed at the Kennebec County Correctional Facility, paid the salaries of anyone working at the facility, or directed their activities. The record also lacks any evidence that a PHP officer, agent, or employee has a connection to the events in the Kennebec County Correctional Facility on which Plaintiff's claim is based.

PHP's economic interest, as a parent corporation, in CHP's Maine-based service contract is unrelated to Plaintiff's claim and is insufficient to confer jurisdiction over PHP. A wholly-owned subsidiary's forum contacts are not attributable to its parent absent clear evidence that the parent treats the subsidiary as a mere agent or exercises a degree of control greater than what is normally associated with ownership. *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 139 (1st Cir. 2006) (addressing the subsidiary issue in the

7

context of a general jurisdiction analysis); *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 466 (1st Cir. 1990) (same). Plaintiff fails to identify any facts that would suggest that PHP exercised control over Defendant Vigue or any other CHP employee who interacted with Plaintiff or supervised Defendant Vigue.[5]

Finally, to the extent Plaintiff relies on activities involving a corporate agent in Colorado causing both PHP's and CHP's corporate filings to be delivered to the Colorado Secretary of State, the sharing of office space in Colorado, and the fact that certain corporate officers have worked at both PHP and CHP, the activities do not qualify as Maine-based activities and have no relationship to Plaintiff's claim.

### 2. Purposeful availment

Purposeful availment refers to the type of activity for which one might reasonably foresee being haled into a certain court. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 60 (1st Cir. 2002). The concept "represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011). Purposeful availment cannot be based on mere "random, fortuitous, or attenuated contacts." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The standard ensures that a defendant is not "swept within a state's jurisdictional reach due

---

[5] Plaintiff primarily relies on the connection demonstrated by the shared employee handbook. However, the fact that a parent company sets the corporate policies and procedures for its subsidiaries is not out of the ordinary. *See*, *e.g.*, *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 505 (D. Del. 2017) (rejecting agency theory in the context of parent's establishment of corporate policies for subsidiary).

solely to the unilateral activity of another party or a third person." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy*, *Inc*., 825 F.3d 28, 36 (1st Cir. 2016) (quotation marks omitted).

PHP's ownership of CHP and its exercise of the ordinary incidents of corporate ownership are not the kind of "behavior" that would make it reasonably foreseeable to PHP that it could be joined as a party in an action in Maine.

### 3. Reasonableness

The final prong of the specific jurisdiction test calls for consideration of certain "Gestalt factors."[6] The burden of demonstrating the unreasonableness of an exercise of jurisdiction falls to the defendant; however, "the weaker the plaintiff's showing on the first two prongs …, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster-New York*, *Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994). Plaintiff's failure to meet the relatedness and purposeful availment standards relieves Defendant PHP of the burden to address the Gestalt factors. *Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995); *Danton v. Innovative Gaming Corp. of Am*., 246 F. Supp. 2d 64, 71 (D. Me. 2003).

### II. Motion for Jurisdictional Discovery

When the plaintiff makes a colorable case for the existence of personal jurisdiction, the plaintiff may be entitled to jurisdictional discovery. *United States v. Swiss Am. Bank*,

---

[6] The factors are (1) defendant's burden of appearing, (2) the forum state's interest in adjudication, (3) the plaintiff's interest in securing relief conveniently and effectively, (4) the judicial interest in effective resolution of the matter, and (5) whether another sovereign has the greater interest in terms of establishing any social policy that pertains to the matter. *Baskin-Robbins Franchising*, 825 F.3d at 40 – 41.

*Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001). The court has broad discretion to award or deny jurisdictional discovery. *Id.* Typically, a district court will only allow an opportunity for jurisdictional discovery if the plaintiff describes with some particularity the discovery it would conduct and the "types of contacts it hopes to discover." *Id.* at 626; *see also Amburgey v. Atomic Ski USA, Inc.*, No. 2:06-cv-149-GZS, 2007 WL 1464380, *5, 2007 U.S. Dist. LEXIS 36424, *15 (D. Me. May 17, 2007) (denying discovery where the plaintiffs "failed to provide facts beyond vague allegations and questions regarding the corporate form," and concluding that "discovery is unlikely to be useful" in that context).

Because Plaintiff has failed to make a colorable showing that this Court has personal jurisdiction over PHP, based on either general contacts with the forum (which Plaintiff has not attempted to establish) or claim-related contacts, and because Plaintiff has failed to outline with any particularity the discovery it would propound, Plaintiff's contention that she should be permitted to conduct jurisdictional discovery is unconvincing.

**Conclusion**

Based on the foregoing analysis, I recommend the Court grant Defendant Physician Health Partners, LLC's Motion to Dismiss (ECF No. 108), and deny Plaintiff's Motion for Jurisdictional Discovery (ECF No. 116/118).

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any

request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

       Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 23rd day of April, 2018.