UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BRANDEE A. LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16-cv-00559-JAW |
| | ) | |
| KENNEBEC COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS AND MOTION FOR JURISDICTIONAL DISCOVERY**

The Court affirms a recommended decision of the Magistrate Judge to dismiss an out-of-state corporate parent of a subsidiary corporation on the ground that the parent did not have sufficient minimal contacts with the forum state to justify jurisdiction. The Court also affirms the Magistrate Judge's recommendation not to allow jurisdictional discovery.

## I. BACKGROUND

On November 7, 2016, Brandee A. Lewis filed a complaint against Kennebec County, the Kennebec County Sheriff's Office and its Corrections Division, the Kennebec County Correctional Facility (KCCF), a number of Kennebec County officials and employees, Crisis & Counseling Centers, Correctional Health Partners (CHP), and Kimberly Arlene Vigue, alleging that while Ms. Lewis was housed in the KCCF, she was "brutally sexually assaulted and physically assaulted by a nurse and multiple staff members at the [KCCF]." *Compl.* ¶ 1 (ECF No. 1). Ms. Lewis alleged that at the time of the assault, Nurse Vigue was employed by CHP, which had its

principal place of business in the city of Denver, state of Colorado. *Id.* ¶¶ 16-17. On October 20, 2017, Ms. Lewis filed a motion to amend the complaint to add as a party defendant Physician Health Partners, LLC (PHP), CHP's parent company. *Pl., Brandee A. Lewis's Mot. for Leave to File Amended Compl. and Add Parties* (ECF No. 76); Attach. 3, *Am. Compl.* On December 22, 2017, the Magistrate Judge granted the Plaintiff's motion to amend complaint. *Decision and Order on Pl.'s Mot. to Am. and Defs.' Mots. to Strike* (ECF No. 96). On December 26, 2017, Ms. Lewis filed the amended complaint. *First Am. Compl.* (ECF No. 97).

On January 31, 2018, PHP filed a motion to dismiss for lack of jurisdiction. *Def. PHP's Mot. to Dismiss* (ECF No. 108) (*PHP Mot.*). On February 22, 2018, Ms. Lewis responded in opposition to PHP's motion to dismiss and, in the alternative, she filed a motion for jurisdictional discovery. *Pl.'s Reply in Opp'n to PHP's Mot. to Dismiss or, in the Alternative, Mot. for Jurisdictional Disc.* (ECF No. 116) (*Pl.'s Opp'n*) (ECF No. 118) (*Pl.'s Mot.*). On March 6, 2018, PHP filed its reply to Ms. Lewis' opposition to the motion to dismiss. *Def. PHP Reply in Support of Mot. to Dismiss* (ECF No. 122) (*PHP Reply*). On March 14, 2018, PHP filed its opposition to Ms. Lewis' motion for jurisdictional discovery. *Def. PHP's Opp'n to Pl.'s Mot. for Jurisdictional Disc.* (ECF No. 123) (*PHP's Opp'n*). On March 28, 2018, Ms. Lewis filed her reply to PHP's response. *Pl.'s Resp. to PHP's Obj. to Pl.'s Mot. for Jurisdictional Disc.* (ECF No. 130) (*Pl.'s Reply*).

On April 23, 2018, the Magistrate Judge issued a recommended decision on PHP's motion to dismiss and Ms. Lewis' motion for jurisdictional discovery.

*Recommended Decision on PHP's Mot. to Dismiss and Pl.'s Mot. for Jurisdictional Disc.* (ECF No. 131) (*Recommended Decision*). On May 6, 2018, Ms. Lewis filed an objection to the Magistrate Judge's recommended decision and moved the Magistrate Judge to reconsider the recommended decision. *Pl.'s Mot. to Recons. and Obj. to Recommended Decision on PHP's Mot. to Dismiss and Pl.'s Req. for Oral Argument* (ECF No. 136) (*Pl.'s Obj.*); (ECF No. 137) (*Pl.'s Mot. for Recons.*). On May 21, 2018, PHP replied to Ms. Lewis' objection to the Magistrate Judge's recommended decision. *Def. PHP's Resp. in Opp'n to Pl.'s Mot. to Recons. and Obj. to the Magistrate Judge's Recommended Decision* (ECF No. 142) (*Def.'s Resp. to Pl.'s Obj. and Mot. for Recons.*). On June 4, 2018, the Magistrate Judge denied the motion for reconsideration. *Order* (ECF No. 143).

On June 7, 2018, Ms. Lewis filed a renewed objection to the recommended decision and requested oral argument. *Pl.'s Renewed Obj. to Recommended Decision on PHP's Mot. to Dismiss and Pl.'s Mot. for Jurisdictional Disc. and Pl.'s Req. for Oral Argument Before the District Court Judge* (ECF No. 144) (*Pl.'s Renewed Obj. and Req.*). On June 11, 2018, PHP filed a response to Ms. Lewis' renewed objection to the recommended decision and request for oral argument. *Def. PHP's Resp. in Opp'n to Pl.'s Renewed Objection to the Recommended Decision (ECF 144) and Req. for Oral Argument (ECF 145)* (ECF No. 146) (*Def.'s Renewed Resp.*).

## II.    THE KEN NIELSEN AFFIDAVIT

To support its motion, PHP submitted an affidavit of Ken Nielsen, the President and Chief Executive Officer of PHP. *Id.* Attach. 1, *Aff. of Ken Nielsen* ¶ 1

(*Nielsen Aff.*).  Mr. Nielsen states that PHP is "a healthcare management company that was founded in 1996," and that CHP "originated as a division of [PHP] in 2005." *Id.* ¶¶ 2-3.  He says that in 2010, CHP "split off as a subsidiary of [PHP] because [CHP] was engaged in a completely different business than [PHP]." *Id.* ¶ 4.  PHP, Mr. Nielsen explained, is "in the business of helping private medical practice in Colorado deliver primary care." *Id.* ¶ 5.  CHP is "a company that is engaged in the business of providing correctional healthcare and third party administration services for state and county correctional facilities." *Id.* ¶ 6.  Mr. Nielsen asserts that while PHP "is the parent company of [CHP], the two companies exist as separate and distinct corporate entities." *Id.* ¶ 7.  He says that PHP and CHP "have different boards of directors and have different managers", that PHP "does not operate or control [CHP] and it does not dictate the business activities of [CHP]," and that PHP and CHP "maintain different bank accounts and the two companies do not co-mingle their assets in any way." *Id.* ¶¶ 8-10.

Furthermore, Mr. Nielsen states, PHP "only does business in the State of Colorado." *Id.* ¶ 11.  Mr. Nielsen avers that "[n]o employee of [PHP] has ever traveled to Maine for any reason on behalf of [PHP]," that PHP "has never had any contracts for services with Maine-based clients, and it has never been subject to suit in Maine," and that PHP "has never done any business in Maine, and it has never advertised or solicited business in Maine." *Id.* ¶¶ 12-14.

Finally, Mr. Nielsen states that PHP "is not a party to the contract that [CHP] has to provide healthcare services at the Kennebec County Correctional Facility" and

that during the times relevant to this lawsuit, PHP did not "hire, fire, train, or supervise any employees of [CHP]." *Id.* ¶¶ 15-16. Mr. Nielsen says that "[t]here are no allegations in the Amended Complaint that involve or implicate anyone employed by [PHP]." *Id.* ¶ 17.

## III. THE POSITIONS OF THE PARTIES

### A. PHP's Motion to Dismiss

#### 1. PHP's Position

PHP contends that Ms. Lewis failed to meet her burden of establishing that PHP has the required "minimum contacts" with the state of Maine to establish general or specific jurisdiction over PHP. *PHP Mot.* at 2. PHP notes that it is the parent company for CHP and, even though Ms. Lewis alleges in her amended complaint that PHP has "substantial affairs" within the state of Maine, PHP denies that it has sufficient contacts within the state of Maine to justify the assertion of federal jurisdiction over it in Maine. *Id.* at 3.

In order to assert jurisdiction over a defendant, the plaintiff must demonstrate that the defendant has "minimum contacts" with the forum. *Id.* at 5 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). PHP notes that "[i]n keeping with the Due Process Clause, courts may not exercise personal jurisdiction 'under circumstances that would offend 'traditional notions of fair play and substantial justice.'" *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe*, 326 U.S. at 316) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In assessing this issue, PHP points to the factors set out by the

5

First Circuit in *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corporation*, 960 F.2d 1080 (1st Cir. 1992). *Id.* at 5 (citing *United Elec.*, 960 F.2d at 1088).

PHP says that if a plaintiff makes a prima facie showing that a non-resident defendant has sufficient minimum contacts with the forum state, the burden shifts to the defendant to convince the court that the "Gestalt factors militate against the exercise of jurisdiction." *Id.* PHP states that the First Circuit set forth five Gestalt factors: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *Id.* at 5-6 (quoting *163 Pleasant St.*, 960 F.2d at 1088).

With this background, PHP argues that this Court has neither general nor specific jurisdiction over it. *Id.* at 6-10. General jurisdiction, PHP maintains, requires that a defendant engage in "substantial or systematic and continuous activity inside the forum state such that the defendant is essentially at home in the forum state." *Id.* (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 755 (2014)). PHP says that there is nothing in the Plaintiff's Amended Complaint that allows for a conclusion that this Court has general jurisdiction over it. Specific jurisdiction, PHP says, allows for jurisdiction over a nonresident defendant when "the cause of the action arises directly out of, or relates to, the defendant's forum-based contacts." *Id.*

at 8 (quoting *163 Pleasant St.*, 960 F.2d at 1089). PHP contends that Ms. Lewis has failed to allege facts that would confer specific jurisdiction over PHP for her claim. *Id.* at 8-10.

## 2. Brandee Lewis' Response

In response, Ms. Lewis argues that this Court has jurisdiction over PHP under Federal Rule of Civil Procedure 4(k)(2), which she says provides that personal jurisdiction is established with service of process for claims arising under federal law if "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." *Pl.'s Opp'n* at 2 (quoting FED. R. CIV. P. 4(k)(2)).

Ms. Lewis contends that because PHP benefits "by receiving profits through its subsidiary which come from the State of Maine," Maine taxpayers "cause benefit to PHP via the services provided by CHP and receiving financial gain is a substantial contact with the State of Maine." *Id.* at 3. Regarding PHP's forum-state activities, Ms. Lewis claims jurisdiction because "PHP is a direct beneficiary of" the contract between CHP and the Kennebec County Correctional Facility. *Id.* at 4. Ms. Lewis points to the Employee Handbook for the employees of PHP and CHP, which she contends is "one and the same." *Id.* at 5. Ms. Lewis notes that in his welcome letter, Mr. Nielsen greets new employees to both PHP and CHP to "***our*** company!" *Id.* (quoting *Ex.* 1 (Welcome letter to new employees in Employee Handbook)). In effect, Ms. Lewis says that the employee handbook does not differentiate between PHP and CHP employees. *Id.* at 5-6. Next, Ms. Lewis argues that because CHP is a "wholly

owned division" of PHP, this constitutes sufficient direct evidence that PHP controls CHP's day-to-day operations. *Id.* at 6.

Ms. Lewis also contends that CHP and PHP have "commingled staff and personnel." *Id.* at 6-7. She notes that from December 8, 2009, when CHP was created, until sometime between December 8, 2015 and December 12, 2016, CHP used the "same exact business address and suite" as PHP. *Id.* at 7. Furthermore, the same person, Joelle Kernitzki, filed the annual reports for both companies. *Id.* at 7-8. Ms. Lewis thus contends PHP and CHP commingled their businesses. *Id.* at 8. She also notes that CHP announced in a press release that Dr. Steve Krebs "is the full-time Chief Medical Officer of both [CHP] and [PHP]"; that Abby Bookover, the media contact, worked for CHP but had an email address at PHP; and that Jeff Archambeau, the current CHP chief executive officer, was announced as having been with CHP and PHP "for more than five years." *Id.* at 5-8. *Id.* Ms. Lewis further maintains that PHP has the final authority for resolving employee disputes within CHP and has hiring and firing authority of CHP personnel. *Id.* It follows, she argues, that PHP had "oversight of [CHP] operations within the State of Maine, to include personnel matters such as Defendant Vigue's torture of Brandee Lewis." *Id.* at 8-9.

Regarding the purposeful availment requirement, Ms. Lewis asserts that "PHP is the controlling company, overseeing the business it created to provide medical services to correctional facilities." *Id.* at 8. She reiterates her earlier arguments concerning the mixture of personnel, PHP's final hiring and firing authority, and PHP's role in resolving employee disputes. *Id.* at 8-9.

8

Finally, Ms. Lewis contends that the Gestalt factors favor this Court's assertion of jurisdiction over PHP. *Id.* at 9-10.

### 3. PHP's Reply

In reply, PHP disputes Ms. Lewis' contention that Federal Rule of Civil Procedure 4(k)(2) provides a basis for the assertion of federal jurisdiction because PHP "is not subject to jurisdiction in any state's courts of general jurisdiction" as Rule 4(k)(2) requires. *Pl.'s Reply* at 2.

PHP also rejects Ms. Lewis' argument that its receipt of profits from CHP constitutes a basis for the assertion of jurisdiction. *Id.* at 2 (quoting *Ergo Licensing, LLC v. Cardinal Health, Inc.*, 2009 WL 2021926, *5 (D. Me. Jul. 13, 2009) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)).

PHP says that "[t]he closest Lewis comes to making a colorable legal argument for personal jurisdiction over PHP is when she identifies certain areas of overlap between the two corporations." *Id.* at 3. PHP distinguishes Ms. Lewis' interpretation of the facts. *Id.* at 3-4. Furthermore, PHP argues that a parent corporation's control over a subsidiary is not a sufficient ground to assume jurisdiction over the parent. *Id.* at 3-7.

### B. Brandee Lewis' Motion for Jurisdictional Discovery

### 1. Brandee Lewis' Position

With her opposition to PHP's motion to dismiss, Ms. Lewis requested that the Court authorize jurisdictional discovery. *Pl.'s Mot.* at 10. She notes that if a plaintiff can make a "colorable case for the existence of personal jurisdiction," a court may

permit the plaintiff jurisdictional discovery. *Id.* (citing *Ergo Licensing*, 2009 WL 2021926). She observes that "the threshold for jurisdictional discovery is 'relatively low.'" *Id.* (quoting *Plixer Int'l, Inc. v. Scrutinizer Gmbh*, No. 2:16-cv-578-DBH, 2017 U.S. Dist. LEXIS 68742, at *2 (D. Me. May 5, 2017) (quoting *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008)). She contends she has met this low threshold. *Id.*

### 2. PHP's Response

Noting that Ms. Lewis has failed to specify what discovery she would like to engage in, PHP argues that her general request for jurisdictional discovery is insufficient. *PHP's Opp'n* at 2 (citing *Barrett v. H&R Block, Inc.*, 652 F. Supp. 2d 104, 116 (D. Mass. 2009)). PHP says that a plaintiff like Ms. Lewis must "present facts to the court which show why jurisdiction would be found if discovery were permitted." *Id.* (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001)). PHP urges the Court to adopt the reasoning of *Amburgey v. Atomic Ski USA, Inc.*, No. 2:06-cv-149-GZS, 2007 U.S. Dist. LEXIS 36424, 2007 WL 1464380 (D. Me. May 17, 2017)), and deny the request for jurisdictional discovery. *Id.*

### 3. Brandee Lewis' Reply

In her reply, Ms. Lewis points to facts that she says meet the standard for jurisdictional discovery. *Pl.'s Reply* at 1-2. She then urges the Court to allow jurisdictional discovery based on policy arguments for the assumption of jurisdiction over PHP. *Id.* at 3-4.

## IV. THE RECOMMENDED DECISION

On April 23, 2018, the Magistrate Judge issued a recommended decision in which he recommended that the Court grant the motion to dismiss the Amended Complaint against PHP and that the Court deny Ms. Lewis' motion for jurisdictional discovery. *Recommended Decision* at 1-10. The Magistrate Judge noted that the law places a burden on the plaintiff to "go beyond the pleadings and make affirmative proof." *Id.* (quoting *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (quoting *Chlebda v. H.E. Fortna & Bro. Inc.*, 609 F.2d 1022, 1024 (1st Cir. 1979)). The Magistrate Judge reviewed the relatedness, the purposeful availment, and reasonableness prongs. *Id.* at 6-9. As the Magistrate Judge concluded that Ms. Lewis failed to meet the two first prongs, he did not analyze the Gestalt factors. *Id.* at 9.

Similarly, because the Magistrate Judge concluded that Ms. Lewis failed to make a colorable showing that this Court had personal jurisdiction over PHP, and because he concluded that Ms. Lewis failed to outline with any particularity the discovery that she would propound, he rejected her request for jurisdictional discovery. *Id.* at 9-10.

## V. POST-RECOMMENDED DECISION FILINGS

### A. Brandee Lewis' Motion for Reconsideration and Objection

On May 6, 2018, Ms. Lewis filed both a motion for reconsideration and an objection. *Pl.'s Mot. for Recons.*, *Pl.'s Obj.* She focused on the motion for reconsideration, not the objection. She reiterated that she had made a colorable showing for jurisdiction sufficient to permit jurisdictional discovery and she listed her

proposed discovery.  *Pl.'s Mot. for Recons.* at 1-4.  She then objected in general, summary form to the Magistrate Judge's recommended decision.  *Pl.'s Obj.* at 5.

### B.    PHP's Response

PHP objected to Ms. Lewis' motion for reconsideration combined with an objection to the recommended decision as "procedurally improper."  *Def.'s Resp. to Pl.'s Obj. and Mot. for Recons.* at 2.  PHP noted that Ms. Lewis failed to make any specific objections to the recommended decision and therefore it contended that she waived the objection.  *Id.* at 3-4.  PHP urged the Court to reject Ms. Lewis' belated submission of her proposed jurisdictional discovery because she failed to submit any specific discovery to the Magistrate Judge.  *Id.* at 4-5.  PHP says that even if the Court considered Ms. Lewis' proposed discovery, it should reject the discovery because her proposed topics have already been addressed by Mr. Nielsen in his affidavit and in any event would not change the outcome of the motion to dismiss.  *Id.* at 5-6.

### C.    The Order on the Motion for Reconsideration

In his June 4, 2018 Order, the Magistrate Judge rejected Ms. Lewis' motion for reconsideration on the ground that she had failed to point to any change in law or facts that would have supported a motion for reconsideration.  *Order* at 1-2.  The Magistrate Judge reiterated his earlier conclusion that Ms. Lewis' concern about the intertwining between PHP and CHP would not allow this Court to assume jurisdiction over PHP.  *Id.* at 2-3.  He denied the motion for reconsideration.  *Id.* at 3.

### D.    Brandee Lewis' Renewed Objection and Request

In her objection to the Magistrate Judge's recommended decision and order on her motion for reconsideration, Ms. Lewis briefly objected in general terms to the Magistrate Judge's rulings. *Pl.'s Renewed Obj.* at 1-2. She also requested oral argument. *Pl.'s Req.* at 2.

### E.  PHP's Renewed Response

PHP observes that Ms. Lewis has still failed to present the Court with any specific objections to the Magistrate Judge's recommended decision and therefore urges the Court to overrule the objection and to deny the request for oral argument. *Def.'s Renewed Resp.* at 1-3.

## VI.  LEGAL STANDARD

Ordinarily, the Court would review the recommended decision using two different standards of review. The part of the recommended decision that recommends dismissal of Ms. Lewis' claim against PHP is dispositive of her claim and therefore is reviewed de novo. The Court reviews any recommended decision by a magistrate judge on a dispositive matter under 28 U.S.C. § 636(b)(1)(B), which requires the Court "make a de novo determination" of "those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *United States v. Raddatz*, 447 U.S. 667, 673-74 (1980).

The portion of the Magistrate Judge's April 23, 2018 order that addresses Ms. Lewis' right to jurisdictional discovery would not typically be considered "dispositive of a party's claim or defense." FED. R. CIV. P. 72(a). Therefore, in the ordinary course, the clearly erroneous and contrary to law standards would apply to this Court's

review of the part of the Magistrate Judge's order that denied the Plaintiff her requested jurisdictional discovery.

However, in the Recommended Decision, the Magistrate Judge noted that he was issuing both his recommendation to grant the motion to dismiss and his recommendation to deny jurisdictional discovery in the form of a recommended decision so that this Court could "apply the same standard of review to the decision on both motions." *Recommended Decision* at 1, n.2. As the order denying jurisdictional discovery is interwoven with the merits of the motion to dismiss, in deference to the Magistrate Judge and in extra fairness to Ms. Lewis, the Court is reviewing both recommendations under the de novo standard of review.

## VII. DISCUSSION

### A. Absence of Specific Objection

Federal Rule of Civil Procedure 72(b) contemplates that a party who is objecting to the recommended decision of a magistrate judge "serve and file specific written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b)(2). Rule 72(b)(3) specifies that the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* The First Circuit has written that "only those issues fairly raised by the objections to the magistrate's report are subject to review in the district court and those not preserved by such objection are preserved on appeal." *Keating v. Sec'y of Health and Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988). "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to

accept the recommendation." Fed. R. Civ. P. 72, advisory committee note to 1983 rule adoption.

On May 6, 2018, Ms. Lewis made the following objection to the recommended decision:

> Plaintiff objects to the Magistrate Judge's findings, analysis, and recommended decision on [PHP]'s Motion to Dismiss.
>
> Plaintiff objects to the Magistrate Judge's findings, analysis, and recommended decision on Plaintiff's Motion for Jurisdictional Discovery.
>
> Plaintiff specifically objects to the Magistrate's finding that Plaintiff has failed to make a colorable showing that this Court has personal jurisdiction over [PHP] based on claim-related contacts.
>
> Plaintiff specifically objects to the Magistrate Judge's finding that Plaintiff has failed to outline with particularity the discovery she would propound.
>
> Plaintiff specifically objects to the Magistrate Judge's finding that PHP's Motion to Dismiss should be granted on the basis that Plaintiff should be afforded the opportunity to conduct jurisdictional discovery before PHP's Motion to Dismiss is contemplated by the Court.

*Pl.'s Obj.* at 5. Then on June 7, 2018, Ms. Lewis filed a renewed objection:

> 1. On May 6, 2018, Plaintiff filed her Objection to the Recommended Decision on [PHP]'s Motion to Dismiss and Plaintiff's Motion for Jurisdictional Discovery.
> 2. In her Objection to the Magistrate Judge's Recommended Decision, Plaintiff [m]otioned for [r]econsideration, timely objected to the recommended decision and requested oral argument before the District Court Judge.
> 3. It appears that Plaintiff's motion may have been unclear, as the Magistrate Judge has denied Plaintiff's request for oral argument before the District Court Judge.
> 4. In abundance of caution, the Plaintiff renews her objection to the Recommended Decision and specifically requests oral argument before the District Court Judge.

*Pl.'s Renewed Obj.* at 1-2.

Neither Ms. Lewis' May 6, 2018 nor her June 7, 2018 objections raised "specific written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b)(2). Accordingly, the Court's review of the Magistrate Judge's recommended decision is limited to whether there is "clear error on the face of the record" in order to accept or reject the recommendation. FED. R. CIV. P. 72, advisory committee note to 1983 rule adoption. Based on this Court's review of the recommended decision and in the absence of any specific objections, the Court easily concludes that the Magistrate Judge's recommended decision contains no clear error.

## B.    Presumed Specific Objections

Despite the absence of specific objections, the Court nevertheless turns to the major points in the recommended decision.

### 1.    Federal Rule of Civil Procedure 4(k)(2)

The Court rejects Ms. Lewis' argument that Federal Rule of Civil Procedure 4(k)(2) confers jurisdiction over PHP in this case. Ms. Lewis has made no showing that PHP is "not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2)(A). Professors Wright, Miller and Steinman have explained that "Rule 4(k)(2) may only be invoked when the defendant is beyond the reach of any state's jurisdiction." 4B CHARLES ALAN WRIGHT, A.R. MILLER & ADAM N. STEINMAN, FEDERAL PRACTICE AND PROCEDURE § 1224 (2015 ed.). Rule 4(k)(2) is inapplicable because as a Colorado corporation doing business in Colorado, PHP is within the reach of Colorado jurisdiction.

### 2.    PHP's Receipt of CHP Profits

The Court also rejects Ms. Lewis' contention that because PHP, as corporate parent, receives profits from CHP, as its subsidiary, PHP is subject to the same jurisdiction as CHP. *World-Wide Volkswagen*, 444 U.S. at 299 ("[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State"); *Andresen v. Diorio*, 349 F.3d 8, 12 (1st Cir. 2003) ("An out-of-state parent's controlling stock interest in a Massachusetts corporation does not alone create jurisdiction over the parent").

### 3.    The Alter-Ego Rationale

If a parent exercises control over its subsidiary that is "so pervasive and detailed as to invoke the sham or alter ego labels", a case can be made for jurisdiction of the parent through the subsidiary. But the First Circuit has written that "a separately managed company is a separate entity." *Andresen*, 349 F.3d at 12.

Here, the Nielsen affidavit leaves little room to contend that PHP is a sham corporation or that it is CHP's alter ego or vice versa: (1) PHP and CHP are involved in different businesses: private medical practice management as opposed to correctional medical care and third party administration services, (2) they have different boards of directors, (3) they have different managers, (4) they maintain separate banking accounts and do not comingle their assets, (5) PHP employees have not traveled to Maine to oversee the operations of CHP, (6) PHP does not advertise or solicit business in Maine, (7) PHP is not a party to the CHP contract with Kennebec County Correctional Facility, and (8) PHP did not hire, fire, train or supervise any

CHP employee. Ms. Lewis has identified some common services shared by PHP and CHP, but shared services alone do not mean that "the parent has thereby purposely directed its activities toward the state where jurisdiction over the subsidiary exists." *Ergo*, 2009 WL 2021926, *4.

## C. The Motion for Jurisdictional Discovery

The Court affirms the Magistrate Judge's decision to deny Ms. Lewis the right to engage in jurisdictional discovery. Ms. Lewis is correct that the legal standard for jurisdictional discovery is not onerous. *United States v. Swiss Am. Bank, Ltd.*, 181 F.3d 30, 45 (1st Cir. 1999) ("A timely and properly supported request for jurisdictional discovery merits solicitous attention"). To demonstrate entitlement to jurisdictional discovery, however, the proponent must specify the type of discovery she is seeking. *Id.* at 626 (The plaintiff bears "the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted"). Here, before his initial ruling, Ms. Lewis never presented the Magistrate Judge any proposed jurisdictional discovery, only a general request to engage in unspecified jurisdictional discovery. *Pl.'s Mot.* at 10. Even after PHP urged the Magistrate Judge to deny the discovery request based in part on the absence of any specific proposed discovery, *Def.'s Obj.* at 2, Ms. Lewis failed to inform the Court what discovery she was seeking. *Pl.'s Reply* at 1-5.

The first time Ms. Lewis presented a list of subjects upon which she proposed discovery was May 6, 2018, when she moved for reconsideration of the recommended decision dated April 23, 2018. *Pl.'s Mot. for Recons.* at 3-4. But as the Magistrate

18

Judge pointed out, a motion for reconsideration should not be used "as a vehicle for a party to undo its own procedural failure [or] allow a party to advance arguments that could and should have been presented" before the decision. *Order* at 1 (quoting *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (quoting *Iverson v. City of Boston*, 452 F.3d 94, 104 (1st Cir. 2006)). This alone is a sufficient basis to affirm the Magistrate Judge's refusal to allow jurisdictional discovery.

The First Circuit observed that a plaintiff who asserts jurisdiction "must be diligent in preserving his rights to be entitled to jurisdictional discovery." *Swiss Am. Bank*, 274 F.3d at 626. The party asserting jurisdiction thus assumes "the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." *Me. Med. Ctr. v. United States*, 675 F.3d 110, 119 (1st Cir. 2012) (quoting *Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001)). Here, Ms. Lewis has been "less than diligent", *id.*, by failing to supply her proposed discovery until after the Magistrate Judge made his recommended decision. *See Me. Med. Ctr.*, 675 F.3d at 119 ("[I]n analyzing a demand for jurisdictional discovery, we have repeatedly emphasized the importance of a plaintiff's diligence").

Reviewing Ms. Lewis' belated specific requests, the Court is not persuaded that Ms. Lewis' proposed discovery is justified. Ms. Lewis made only the barest of claims that would attach jurisdiction in Maine to PHP, claims that would be available against virtually any parent corporation when there is jurisdiction only over a subsidiary. Ms. Lewis simply posits the statements that Mr. Nielsen made in his affidavit concerning PHP and its relationship with CHP and "seeks discovery" to

challenge his sworn statement. *Compare Nielsen Aff.* ¶ 16 ("[PHP] did not hire, fire, train, or supervise any employees of [CHP]"), *with Pl.'s Mot. for Recons.* at 3 ("Plaintiff asserted that PHP has hiring and firing authority over CHP personnel. Therefore, Plaintiff would seek in discovery whether or PHP has hiring and firing authority over CHP personnel").

If Ms. Lewis had some basis for claiming that PHP hired CHP personnel, for example, it would be one thing, but here Ms. Lewis simply asserts that Mr. Nielsen must be wrong and she would like to engage in discovery to prove her hunch. Counsel's skepticism does not amount to a "colorable case" justifying discovery. *Swiss Am.*, 274 F.3d at 625; *Amburgey*, 2007 U.S. Dist. LEXIS 36424, at *16-17 ("Plaintiffs have failed to provide facts beyond vague allegations and questions regarding the corporate form, which show why jurisdiction would be found with discovery. Given the dearth of contacts that Atomic Austria maintains with the forum state, discovery is unlikely to be useful in establishing jurisdiction").

Nor has Ms. Lewis made any effort to demonstrate what type of discovery she proposes. She merely says she would "seek discovery" on a number of issues. *Pl.'s Mot. for Recons.* at 3-4. She does not say whether her proposed discovery will come in the form of interrogatories (and if so how many), requests for production of documents, (and if so what documents and how many requests), depositions of PHP witnesses (and if so, who, where and how long). If Ms. Lewis had been serious about engaging in limited discovery, she would have set out a discovery plan and she could have attached proposed discovery for the Court's consideration so that the Court

could assess whether the proposed discovery would clarify the jurisdictional issue. Here, Ms. Lewis only insists that she be allowed to "seek discovery." This does not comply with the diligence requirement. *Me. Med. Ctr.*, 675 F.3d at 119.

In short, Ms. Lewis' proposed discovery strikes the Court as an attack on First Circuit precedent involving jurisdictional claims against a parent corporation in the guise of a request for information. *Andresen*, 349 F.3d at 12; *De Castro v. Sanifill, Inc.*, 198 F.3d 282, 283-84 (1st Cir. 1999); *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990); *Danton v. Innovative Gaming Corp.*, 246 F. Supp. 2d 64, 72 (D. Me. 2003) ("Under the alter ego rule, a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same . . . ."). As the First Circuit has written, "if overall control were sufficient, every parent would be present wherever a wholly owned subsidiary was present in a state." *Andresen*, 349 F.3d at 132. On this record, the Court concludes that the Magistrate Judge correctly rejected Ms. Lewis' request for jurisdictional discovery.

## VIII. CONCLUSION

The Court performed a de novo review of the Magistrate Judge's Recommended Decision on Physician Health Partner's Motion to Dismiss and Plaintiff's Motion for Jurisdictional Discovery (ECF No. 131) on Defendant Physician Health Partner's Motion to Dismiss (ECF No. 108) and Plaintiff Brandee A. Lewis' Reply in Opposition to Physician Health Partner's Motion to Dismiss or, in the Alternative, Motion for Jurisdictional Discovery (ECF No. 118). For the reasons in the Recommended

Decision and in this decision, the Court AFFIRMS the Magistrate Judge's Recommended Decision on Physician Health Partner's Motion to Dismiss and Plaintiff's Motion for Jurisdictional Discovery (ECF No. 131) and OVERRULES Plaintiff Brandee A. Lewis' Motion to Reconsider and Objection to Recommended Decision on Physician Health Partner's Motion to Dismiss and Plaintiff's Request for Oral Argument (ECF No. 136) and Plaintiff's Renewed Objection to Recommended Decision on Physician's Motion to Dismiss and Plaintiff's Motion for Jurisdictional Discovery and Plaintiff's Request for Oral Argument Before the District Court Judge (ECF No. 144). The Court DENIES Plaintiff's requests for oral argument (ECF No. 118) and (ECF No. 144). The Court DISMISSES the Plaintiff's First Amended Complaint (ECF No. 97) against Physician Health Partner, LLC.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 10th day of September, 2018